## JONES v. THE STATE.

1. One who has received a pistol from the State to keep until demanded, and who has given a bond for its return, has such a special property in it, as will sustain an allegation in an indictment for the larceny of the pistol, that it was his property. It will not vary the case, that the pistol is not in his actual possession, but is in the possession of his overseer.

2. It is not an error of which the prisoner can complain, that the jury omit to find the value of the stolen property.

3. Insanity, intervening between the time of the alledged offence, and the trial, will not exculpate the prisoner.

4. If, from the appearance and conduct of the prisoner, when called on to plead, there is reason to believe he is insane, the court should institute a preliminary proceeding, to ascertain his sanity. Yet this must be left to the sound discretion of the court, and if the prisoner pleads to the indictment, the omission of the court to institute the preliminary inquiry, cannot be assigned as error, though from the facts as set out in the record, there may be strong grounds for the belief, that the prisoner was insane at the time of the trial.

Writ of Error to the Circuit Court of Dallas.  Before the Hon. E. Pickens.

The plaintiff in error was indicted in the circuit court of Dallas county, for the larceny of a pistol, charged in the indictment to be the property of one Ashley W. Speight, and of the value of fifteen dollars.  At the fall term of said circuit court, 1847, the prisoner was arraigned, and pleaded not guilty to the indictment.  Thereupon came a jury, who re-

20

turned a verdict of guilty, but did not in their finding, assess the value of the pistol.

Upon the trial, a bill of exceptions was taken at the instance of the prisoner's counsel, from which it appears, that the pistol named in the indictment belonged, at the time of the alledged larceny, to the State of Alabama, and not to Speight ; that Speight, being a member of a horse company, had received the pistol on loan from the State authorities, and had given bond according to law, for its return to the State. That the pistol, when taken, was not in his immediate possession, but was upon his plantation, in possession of his (Speight's) overseer, some twenty miles distant from Speight's residence. Many circumstances were proved, conducing to show, that the prisoner, at the time of the commission of the alledged offence, was insane, and a physician who heard all the evidence, gave it as his opinion that the prisoner had been laboring under a progressive insanity from July or August, 1846, until the trial. That he was insane prior to the commission of the alledged offence, and was greatly so at the time of trial.

Upon this evidence, the prisoner's counsel asked the court to charge the jury, that if the pistol, at the time it was taken, belonged to the State, and not to the person named in the indictment, the prisoner must be acquitted ; this charge the court gave, with the qualification, that although the pistol may have belonged to the State, yet if it was held by Speight in the manner above set forth, it gave him sufficient property to sustain the averment contained in the indictment; to which charge as given, the plaintiff's counsel excepted. The court was further asked to charge, in behalf of the prisoner, that if his insanity commenced before the commission of the alledged offence, and was progressive and still continues, the jury should acquit him ; which charge the court gave, with the qualification, that if he was sane at the time the pistol was taken, the defence would not avail him. To this qualification of the charge asked, the prisoner, by his counsel excepted, and the assignments of error present the legality of these charges for revision in this court, as well as the sufficiency of the verdict.

G. W. GAYLE, for plaintiff in error.

I. A. W. Speight had neither an absolute or special property.   1. Speight had only the charge, or use of the pistol, and the possession and property remained in the State.   See 2 Russ. 117-18; 1 Hawk. P. C. ch. 33, § 9; Com. v. Morse, 14 Mass. Rep. 217; Morton v. The People, 8 Cow. 137; Dillenback v. Jerome, et al. 7 Cow. 294.

2. To strengthen the above view, the pistol may be said to have been in the custody of the law.   See Clay's Dig. 53, § 5; 2 Russ. 173; 14 Mass. 217; 8 Cow. 137; 7 Ib. 294.

3. There are but two kinds of property, absolute and special.   The special can only be in one person.   If Speight was the bailee of the State, he had parted with the possession to his overseer, and therefore with the special property.

4. But the court should presume the witness, Speight, to be mistaken.   The Colonel of the regiment gave the bond to the State, when Speight was a mere member of a volunteer company.   See Clay's Dig. 53, § 5.

If the special property then is in any one else than the State, it is in the Colonel of the regiment to which the volunteer company belonged, for there cannot be two distinct bailees of the same property.

II. The qualification of the charge on insanity lead the jury to find a verdict contrary to evidence.   1. If the insanity commenced and existed prior to the asportation of the pistol, and was progressive up to the trial, it is impossible the accused could have been sane, when the alledged offence was committed.

3. The record does not show that the jury found the value of the pistol.   Roscoe's Cr. Ev. 577; The State v. Flora, 4 Porter, 111.

WM. L. YANCEY, pro Attorney General, for the State.

1. Under the proof, A. W. Speight had a special property in the pistol.   2 Russ. on Cr. 107-8, 159; 1 Hawk. Pleas, 145, § 13; Commonwealth v. Morse, 14 Mass. 217; Norton v. People, 8 Cow. 137; Dillenback v. Jerome, et al. 7 Ib. 294; Clay's Dig. 53, § 3, 4, 5, 10, 11.

2. The court must presume that the witness spoke the

truth, and was not mistaken.  Speight may have recently been Colónel of the regiment, or some other officer therein, and the record does not deny such a presumption.   And such a presumption is necessary to  sustain the evidence.   Clay's Dig. 53, § 4, 5, 10, 11.

3.  If the Colonel of the regiment, " or some other officer," had not given bond, then the common law governs the case, and Speight had a  special  property in the pistol.    2 Russ. on Cr. 109, 159;  Rex v.  Savage, 24;  Eng.  C. Law, 247; Hale's P. C. 513;  2 East's Crim. Law, 16, § 90, 653.

4.  The possession by the overseer, was the possession of Speight.    Com. v. Morse, 14 Mass. 217.

5.  The qualification of the charge as to insanity was properly made.    The proof was not positive that the prisoner was continually insane, up to the commission of the crime ; and if  so,  the charge asked called for an acquittal of the prisoner, even  if  sane  at the moment of stealing the pistol. State v. Martin, 2 Ala. 43.

6.  The value of the pistol need not be found by the jury, specifically.   It was alledged in  the  indictment, and the jury, by the verdict of guilty, responded to it.    Value of a slave is found, because  the  law gives it to the owner.    Besides, the plaintiff in error  could not suffer by the failure to find the value.

CHILTON, J.—1. The first question proposed for our consideration is, whether the facts as stated in the bill of exceptions, show such property in the pistol, in Speight, as will sustain the indictment, and render the qualification given by the court, in connection with the first charge prayed for by the prisoner's counsel, proper ?    It is laid down in the books generally, that where the delivery of goods is made for a certain special and particular purpose, the possession is still supposed to reside, unparted with, in the first proprietor. See 1 Hawk. P. C. c. 33, § 9; 2 Russ. 107.   The distinction is drawn between the bare charge of goods, or a special use in them, and a general bailment; in the one case, the possession is supposed to be in the owner, and the party having the charge, or use, may commit larceny of them ; in the other, he acquires a special property, and it is not the

subject of felonious conversion by the possessor.  2 Russ.
108.  But whenever a special property in the goods vests in
the holder, by reason of a contract creating a bailment, there
is no doubt but that it is sufficient to describe the chattel as
belonging to the bailee.   The indictment may charge the
property to belong either to the general or special owner.
Examples are given in the books of this character, such as a
lessee for years, a bailee, a pawnee, a carrier, and the like.
2 Russ. 157.  It is clear to my mind, that Speight having
received the pistol to keep, until demanded by the State, and
having given his bond for its return, has a special property
in it, and the fact that it was left with his overseer, on his
farm, cannot alter the case.   The overseer's possession was
the possession of his employer, who was bound for the re-
turn of the chattel.   The employer is then as much in pos-
session of this article of property as of any other in the
charge of his overseer.   See cases referred to in the defend-
ant's brief.

2.  That the jury did not find the value of the property
stolen, is not erroneous ; but if it was, it is an error of which
the prisoner cannot complain.   It has no effect upon his
guilt or innocence, but is only important as it relates to the
restitution of the property stolen.   That he is not required
to restore the property, or that the jury have not, by their
verdict furnished the party aggrieved by reason of the larce-
ny, with the means of obtaining judgment, under our statute,
for the value of the pistol against the prisoner, is certainly
no injury to him, and not having been injured, he cannot
complain.

3.  The remaining inquiry relates to the legality of the charge
as qualified by the presiding judge.   We are informed by the
bill of exceptions, that there were strong circumstances tending
to show the prisoner's insanity, from a period anterior to the
commission of the alledged offence, down to, and at the trial.
A physician, who heard the testimony, gave it as his medi-
cal opinion, that he was afflicted with progressive insanity
from a period some time before the time of the alledged of-
fence, and was greatly insane at the time of the trial.   Now
we agree with the court, that if the prisoner was sane at the
time of the commission of the offence, the jury should not

have returned a verdict in his favor. It is beyond question, that insanity intervening between the time of the alledged offence and the trial, cannot have the effect to exculpate the prisoner. There is then no error in the charge of the court, but the only matter of any difficulty is this. The evidence strongly indicated, perhaps was conclusive, of the prisoner's insanity *at the time of the trial.* Under such circumstances, it was not proper that he should have been put upon his trial. By the humanity of the common law, a party who was insane at the time of the trial, could not be arraigned. If he became insane after his conviction, he could not be executed while he remained thus demented. See 1 Hawk. P. C. 3, §
3; 1 Hale, 34-5; 1 Russ. 13; 4 Bl. Com. 25.

In the Commonwealth v. Seth Braley, 1 Mass. Rep. 102, the prisoner was brought into court, and the indictment for killing his wife being read to him, he was asked the usual question whether he was guilty or not guilty, the prisoner said he did not know what to answer, it seemed to him he had seen her since. The court suspended the arraignment, giving the prisoner time to consider, and after another attempt to have him plead, which was ineffectual, being satisfied from his appearance and conduct he was insane, a jury was immediately impannelled and sworn "well and truly to try between the commonwealth and the prisoner at the bar, whether he neglected and refused to plead to the indictment against him for murder, of his free will and malice, or whether he did so by the act of God." The jury found he did so "by the act of God." Whereupon he was remanded to jail. But in the case before us, the judge did not see proper to test the prisoner's sanity, by any preliminary inquiry to ascertain whether he was capable of pleading to the indictment—he did plead, and a trial and conviction was the result. Although we are of opinion that the facts disclosed in the bill of exceptions, might well have warranted the preliminary inquiry as to the prisoner's mental condition, yet this must be left to the sound discretion of the court. If, amid the mystery and veil which shrouds the phenomena of mental aberration, so difficult to penetrate, the judge should be mistaken, and try an insane man, (as we incline to think has been done in the case before us,) it will present a case in

which there may be a strong appeal to executive clemency.
We cannot, from the record, see that error, such as we can
judicially notice, has been committed.    The judgment of the
circuit court is therefore affirmed.