## MOORE ET AL. *vs.* THE STATE.

[INDICTMENT FOR LARCENY.]

1. *Sufficiency of indictment.*—In an indictment which charges that the defendants "feloniously took and carried away *from a dwelling*" certain articles of personal property, the italicized words, if not equivalent to a charge of larceny "in a dwelling-house," (Code, § 3170,) nor liable to be rejected as surplusage, are at most mere matter of description, which it may be necessary to prove on the trial, and do not affect the sufficiency of the indictment.

2. *Sufficiency of verdict.*—Under such an indictment, a verdict finding the defendants "guilty of larceny of the property, as charged in the indictment," and assessing the aggregate value of the stolen property "at fifty dollars in silver and gold," is sufficient to support a judgment of conviction and sentence to three years' imprisonment in the penitentiary.

3. *Act of December* 15, 1865, *changing punishment of grand larceny, arson, and burglary, applicable only to subsequent offenses.*—The act approved December 15, 1865, entitled "An act the more effectually to prevent the offenses of grand larceny, arson, and burglary," (Session Acts, 1865–6, p. 116,) applies only to offenses committed after its passage, and leaves the former laws in force as to offenses committed prior to its passage.

FROM the Circuit Court of Tuskaloosa.

Tried before the Hon. WM. S. MUDD.

THE record in this case contains only the indictment, and the judgment-entry showing the trial and conviction; which are in the following words:

"Circuit Court, Special Term, December, 1865.

"The grand jury of said county charge, that before the finding of this indictment, Robert Moore, John Curtis, and Joseph Holsomback feloniously took and carried away from a dwelling two twenty-dollar gold pieces, and twenty half-dollar pieces in silver, the property of Elizabeth Goyne, of the value of fifty dollars; against the peace and dignity," &c.

"And afterwards, to-wit, on the 4th April, 1866, the following proceedings were had in said cause:

"The State of Alabama,⎫   This day came Alberto Martin,
        *vs.*        ⎮   solicitor, who prosecutes for the
    Robert Moore, and ⎮  State, and also came the defend-
    Joseph Holsomback. ⎭ ants in their own proper persons;
and thereupon came on to be heard the defendants' de-
murrer to the bill of indictment; and, after argument of
counsel thereon, it is considered by the court, that said
demurrer be overruled,—the court holding that the indict-
ment sufficiently charges a simple larceny, although it does
not sufficiently charge a larceny from a dwelling-house.
And the defendants, in their own proper persons, being
arraigned on the bill of indictment, in their own persons
severally pleaded thereto not guilty, and for trial severally
put themselves upon the country ; and the solicitor doth
the like.  Thereupon came a jury," &c., "who, on their
oaths, do say, ' We, the jury, find the defendants guilty of
larceny of the property, as charged in the indictment, and
assess the value of the property alleged to be stolen at
fifty dollars in silver and gold.'  And the said defendants,
being severally asked what they had to say why the sen-
tence of the law should not now be pronounced on them,
say nothing.  It is therefore the judgment, order, and
sentence of the court, that each of said defendants be
imprisoned in the penitentiary of the State for three years.
But, because of certain questions of law, arising in the
proceedings on the indictment, having been reserved for
the consideratión of the supreme court, it is ordered that
the execution of the judgment and sentence of the court
be suspended, as to each of the defendants, until the 10th
day of August next.   It is further considered by the
court, that the State of Alabama, for the use of Tuskaloosa
county, recover of said defendants the costs of this prose-
cution, for which let execution issue."

W. R. SMITH, for the prisoners.
JNO. W. A. SANFORD, Attorney-General, *contra.*

BYRD, J.—1. Whether the words "feloniously took and
carried away *from* a dwelling," import a taking in a "dwell-

ing-house," or not, the demurrer should have been over-ruled. In the first case, the indictment would be good under section 3170 of the Code; and in the latter, it would be simple larceny, and good under section 3173. The words "from a dwelling" do not have the same import as "in a dwelling-house"; and section 3170 has been construed by this court.—1 Bish. Cr. Law, §§ 294–306; *Henry v. The State*, at last term. See, also, *Chambers v. The State*, 6 Ala. 855. The words "from a dwelling," used in the indictment, may, perhaps, be treated as surplusage; but if not, it is only, at most, matter of description, which, if necessary to be proven, can only be taken advantage of on the trial, and by asking an appropriate charge of the court. It is true, that the form in the Code, for the offense described in section 3170, uses the words "from a dwelling-house," instead of "in a dwelling-house"; yet, on the trial, the proof must show that the taking was "in a dwelling-house." But this is another objection which must be made in the progress of the trial, and not by demurrer to the indictment. The prisoners in this case saw proper to rest their defense, as to this point, on demurrer, and in no other manner; and as the sentence is for three years' confinement in the penitentiary, we can not tell, except from the entry made on the demurrer, whether the court sentenced them under section 3170 or section 3173. But it is evident from the ruling on the demurrer to the indictment, as set out in the judgment-entry, that the court sentenced the prisoners under the latter section.

2. The verdict is responsive to the indictment, and authorized the judgment rendered on it.—*Case v. The State*, 26 Ala. 17; *Jones v. The State*, 13 Ala. 157; *Hawkins v. The State*, 9 Ala. 137; *Nancy v. The State*, 6 Ala. 483. The evidence introduced on the trial is not set out in the record, and we must presume that the jury found the value in gold and silver, according to the evidence; and there is no error in such finding. Whether the indictment is to be taken as good under section 3170 or section 3173, the verdict responds to it in finding the "defendants guilty of larceny of the property *as charged* in the indictment"; and if defendants desired to raise any question on that point, they could

have done so by asking a charge of the court on the trial, and, if refused, excepting.

3. The counsel for the prisoner insists, that an act of the 15th December, 1865, (Pamph. Acts, p. 116,) is a repeal of sections 3170 and 3173 of the Code, as to the punishment; and argues that, as that act provides another and more aggravated punishment, it by implication repeals the punishment provided in said section of the Code, and that the new punishment can not be inflicted. We concede that the new punishment can not be inflicted, where it has been aggravated in comparison with the punishment declared by the law at the commission of the offense. The other branch of the argument this court has fully considered in the case of *Miles v. The State*, at this term, and in other cases; and its conclusion is adverse to the position taken by the prisoner's counsel.

It is insisted by the counsel, that the latter clause of the act of the 15th December, 1865, in these words, "at the discretion of the jury trying the same," secures to the prisoners the right to have the term of their imprisonment fixed by the jury, and at their discretion. But the penalty prescribed in the act is death, or imprisonment in the penitentiary for any period not less than five years. Now, here is a case of alternative punishments, as to which the jury is authorized to exercise a discretion, and inflict either. But, under sections 3170 and 3173, there is no alternative punishment as to which the jury can exercise any discretion; and, by section 3621, the court is required to fix the term of imprisonment. And this is an additional argument, if one was needed, to show that the legislature never intended by this act to repeal the sections of the Code (3170 and 3173) referred to, *as* to the punishment to be inflicted on offenses committed before that time. It is a grave question, whether the act affects section 3170 at all. It certainly does section 3173, which punishes "grand larceny" committed after *its* passage.

Legislative enactments often get the law into a twist difficult for the courts to unravel; but it is the duty of the courts to do so, if they can, and preserve the harmony and consistency of the statute and common law. We therefore

hold, that the discretion given to the jury by the act can only be exercised as to the alternative punishments prescribed by the act, and has no reference whatever to the punishment prescribed by the Code; and that alternative punishments prescribed by the act are *only* to be administered upon persons who, after the passage of the act, "shall be guilty of the offense of grand larceny," &c. The act certainly applies, by its terms, only to offenses committed after its passage. The ingredients of the offenses mentioned therein are not changed; the punishment, as to a certain class of persons, who after its passage "shall be guilty," is prescribed, and *it* is greater than the punishment prescribed by the prior law for the same offenses; and this, upon principles of the common law, neither expressly nor by implication, repealed the former statute.

Repeals by implication are never favored, and for such a repeal to take effect, the repugnancy must be clear. A statute is never repealed by the repugnancy of matter in a subsequent one, except to the extent of such repugnancy. If such repugnancy between two statutes effects a repeal of the former to the extent of the opposition, and leaves a field still for the independent operation of both, the latter does not repeal the former as to such matter not affected by the later statute. If a new penalty is provided, of such a *character* as repeals by implication the punishment prescribed by the former law for the same offense, then, if the new punishment aggravates the former, it can not be administered; nor can this be done though the former law is not repealed by implication or otherwise, if the offense was committed prior to the passage of the new statute. For instance, if the new statute provided that an offender could be punished, for an offense committed prior to its passage, by imprisonment in the penitentiary for five years, or by the punishment prescribed at the time of the commission of the offense, which was death, then the prisoner should at least have an election; but, if the new statute should provide that offenders prior to the passage of the act should be punished in a way which aggravated the punishment, though this would have been a good statute by the common law, yet, in this country, the constitutional provision against

*ex-post-facto* laws prohibits the infliction of such a punishment.—*Calder v. Bull,* 3 Dal. 391; *Carpenter v. The State of Penn.,* 17 Howard, and authorities there cited.

The judgment is affirmed.