Huey R. LEE, Appellant,

v.

STATE OF ALABAMA, Appellee.

No. 22994.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1967.

Huey R. Lee, pro se.

Walter Mark Anderson, III, Asst. Atty. Gen., for appellee.

Before BELL and THORNBERRY, Circuit Judges, and FISHER, District Judge.

## OPINION ON MOTION FOR REHEARING

PER CURIAM:

Appellant's motion for rehearing is denied.[1] He contends that the court failed to give application to the case of Pate v. Robinson, 1966, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, which holds that the conviction of an accused person in a state court while he is legally incompetent violates the due process clause of the Fourteenth Amendment, and that the question may be raised on a petition for writ of habeas corpus. His view is that it necessarily follows that he was entitled to a plenary hearing in the District Court on his contention that he was incompetent to stand trial. The propositions of law

asserted are correct. However, this was the issue presented on the appeal: Whether the District Court erred in denying a hearing on the question of appellant's competency at the time of his trial.

Pate v. Robinson, supra, does not require a hearing in every case where such a claim is made. Whether a hearing is indicated is to be determined under the hearing requirement rules of Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 770. The state hearing which was afforded appellant prior to his murder trial on the question of his mental competency, and the disposition of that question meets the rule of Townsend v. Sain, supra. No further federal hearing is required.

There is, however, one portion of our opinion in Lee v. Wiman, 5 Cir., 1960, 280 F.2d 257, at p. 266, which should be clarified. It was there indicated that a federal habeas court might treat a state prisoner, seeking collateral relief based on a claim of mental incompetence at trial, differently from a federal prisoner in the same circumstance. The difference was couched in terms of restrictions on the right of a state prisoner to raise such a question in a federal habeas court. There were no restrictions on a federal prisoner. Pate v. Robinson, supra, makes it clear that there can be no difference between the relief available to a federal or state prisoner in such circumstance. Either may have the due process question of his mental competency to stand trial considered on a petition for collateral relief, assuming the necessary factual basis to warrant a hearing.

We have reconsidered the factual posture of appellant's claim. He was convicted in 1943 for murdering his father in 1942, and sentenced to life imprisonment. Under the authority of Pate v. Robinson, supra, his discharge from prison would be mandatory after affording the state an opportunity to try him again

1. The motion is directed to our opinion rendered August 25, 1966. Lee v. State of Alabama, 5 Cir., 1966, 364 F.2d 945.

within a reasonable time. That case holds that it would not be sufficient to simply order a hearing in the District Court on whether he was competent to stand trial in view of the long lapse of time since the trial. Seven years had elapsed since the state trial of Robinson. Appellant, on the other hand, was tried twenty three years ago. Whether this relief will be granted depends upon the viability of our prior decision, Lee v. Wiman, supra.

█ That decision and the decision of the Supreme Court of Alabama in Ex Parte Lee, 1946, 248 Ala. 246, 27 So.2d 147, point out that appellant was given a jury trial under the provisions of Title 15, § 428 of the 1940 Code of Alabama, shortly after the murder, on the issue of his sanity. The issue involved his sanity at the time of the hearing. Seven physicians and seventeen lay witnesses testified upon that hearing. Some of the evidence is detailed in our prior opinion. Lee v. Wiman, supra. Subsequent events are also there detailed and reasons stated as to why a federal hearing was not required. We concluded then that appellant was not entitled to a hearing in the District Court on the question of his mental competence at the time of his trial. We adhere to that conclusion.

Denied.

THORNBERRY, Circuit Judge (dissenting):

A re-examination of the record on appeal and the entire history of this extended litigation leads me to the conclusion that petitioner Lee has been deprived of those fundamental liberties of the person safeguarded against state action by the due process clause of the fourteenth amendment. For this reason, I am compelled to respectfully dissent from the views expressed by the majority. My actions rest upon the conviction that the question of petitioner's competency to stand trial was never determined by the state court in such manner as to conform with federal due-process standards.

On July 20, 1942, a sanity hearing was held before judge and jury in the Alabama court. The jury returned a verdict reading: "We the jury find defendant to be sane."[1] On October 20, 1942, petitioner was indicted by the Grand Jury and charged with the murder of his father.[2] Two days later the sheriff filed a petition with the county court recommending that Lee be transferred to the state hospital for observation. A similar request was filed by Lee's attorneys. These requests were granted by the court pursuant to Section 425 of Title 15 of the 1940 Code of Alabama.[3] Lee remained in the hospital for over nine

1. This verdict has been interpreted on numerous occasions as constituting a finding of competency to stand trial. Lee v. Wiman, 5th Cir. 1960, 280 F.2d 257; Ex parte Lee, Ala. 1946, 27 So.2d 147; Lee v. State, 1944, 246 Ala. 343, 20 So. 2d 471.

2. The facts of this case and the judicial proceedings leading up to trial have been set out in greater detail in Lee v. Wiman, supra note 1, and in Ex parte Lee, supra note 1.

3. "§ 425. *Investigation of sanity of person charged with capital offense.*— Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialist practitioners in mental and nervous diseases, appointed by the judge, or by the written report of the superintendent of the Alabama state hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime.

"Such defendant shall remain in the custody of the superintendent of the Ala-

months and was under constant observation by state physicians. These observations resulted in a written report prepared for use of the court pursuant to the above-mentioned statutory provision. The views expressed in this report raised serious doubt as to Lee's then existing mental condition. On August 3, 1943, Lee was returned to jail. He was subsequently arraigned and was finally placed on trial on October 27, 1943, fifteen months after the jury finding of sanity.

On numerous occasions since the day of his conviction, Lee has urged before the courts, both state and federal, that he was incompetent to stand trial on October 27, 1943, and that failure of the state to determine his competency at that time constituted lack of due process. The answer to this contention has continually been that the jury determination of July 20, 1942, satisfied constitutional requirements. To this view, I can no longer subscribe. A passage of fifteen months, in itself, would raise serious doubts as to the continued viability of a determination of present competency to stand trial. This is especially true where there is abundant evidence, as in this case, of a very unstable personality.

Here, however, we have much more than the mere passage of time. The State of Alabama has wisely seen fit to provide statutory machinery to furnish evidence for, and thus implement, determination of criminal responsibility and mental incompetency. That machinery was here set in motion by a peace officer of the state. Pursuant to this statutory procedure, petitioner was placed under continuous observation for a nine-month period. The observing physicians then filed a report with the court, as required by statute, stating the conviction that petitioner was at that time incompetent.[4] It would appear, however, that no use was ever made of this report. No inquiry by way of an evidentiary hearing was ever made into petitioner's competency on or about October 27, 1943, the date of his trial. The argument could no doubt be made that the defense had access to the report, could have asserted it in support of a plea of incompetency at the trial, and that the failure to enter such a plea constitutes waiver. This position, however, has been foreclosed by the Supreme Court:

The State insists that Robinson deliberately waived the defense of his competency to stand trial by failing to demand a sanity hearing as provided by Illinois law. But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his competency to stand trial. See Taylor v. United States, 282 F.2d 16, 23 (C.A. 8 Cir. 1960).

bama state hospitals and subject to the observation of and examination by such commission of lunacy for such length of time as may in the judgment of the commission of lunacy be necessary to determine his mental condition so far as it affects his criminal responsibility.

"As soon as such commission of lunacy has reached a conclusion, within the time and in the respect as hereinabove set forth, as to the mental condition of such defendant, it shall make a full written report thereof to the clerk of the court in which the indictment against said defendant is pending, which report shall be placed on file and be accessible to the court, to the solicitor and to the counsel for defendant.

"It shall be the duty of the clerk of said court upon receipt of said report to issue an order to the sheriff of the coun-

ty directing that such defendant be remanded and removed to prison and that the criminal proceedings against him be resumed or he be otherwise legally discharged.

"The expense of removing such defendant to and from the hospitals and of maintaining him while there confined, shall be paid in the same manner as provided by law in the case of persons adjudged to be of unsound mind following inquisition in the probate court."

4. Although this report is couched in terms of criminal responsibility, one cannot read it without concluding that the reporting physicians considered petitioner presently incompetent to stand trial. This report is set out in Lee v. Wiman, supra note 1 at 261–262 of 280 F.2d.

Pate v. Robinson, 1966, 383 U.S. 375, 384, 86 S.Ct. 836, 841.

Admittedly, the issues under discussion were investigated, and decided adversely to the position here asserted, in Lee v. Wiman, 5th Cir., 1960, 280 F.2d 257. Clearly, however, the doctrine of *res judicata* has no application in habeas corpus proceedings, Sanders v. United States, 1963, 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148; Fay v. Noia, 1963, 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L. Ed.2d 837, and re-evaluation of constitutional assertions is not thereby foreclosed. This is especially so where subsequent pronouncements of the Supreme Court call into question the continued viability of prior determinations. Such is the situation when this Court's holding and reasoning in Lee v. Wiman is viewed in light of the language and spirit of Pate v. Robinson.

The majority opinion stresses the belief that the sanity hearing afforded Lee fifteen months prior to his murder trial meets the hearing requirement rules of Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. This may be so. I am of the opinion, however, that the decision and rationale of *Townsend* do not foreclose the view here taken. The "rules" outlined in *Townsend* were formulated within the context of the factual situation there confronting the Court. Surely they were not meant to be exhaustive no matter what the nature of the constitutional inquiry. The critical inquiry in *Townsend* was whether a state prisoner had ever been afforded an adequate hearing concerning the voluntariness of his confession. Such determination necessarily involves findings relating solely to past events which, having once occurred, are not subject to future alteration.[5] Therefore, an adequate determination as to the past existence or nonexistence of such events, once fairly made, should properly be looked upon as determinative of the issue for all future time (in the absence of newly discovered evidence). The issue of competency to stand trial, however, of necessity involves a determination of a *present* condition—a condition subject to future change. It would thus appear that a significant passage of time can vitiate the constitutional adequacy of a hearing on this question, whereas such is not the case where the issue at hand is the determination of the existence of facts as of a certain point in time prior to the hearing. It therefore follows that criteria formulated to establish due-process boundaries in cases involving inquiries of the type present in *Townsend* will not necessarily control where the question is of the nature here present. For this reason, I feel that reliance upon *Townsend,* in our present situation, is misplaced.

Convinced as I am that petitioner's constitutional rights have been violated in light of the significant passage of time and the totality of events intervening between the original sanity hearing and trial, I would order his release, conditioned upon the right of the state to retry him within a reasonable time. This relief is clearly required by Pate v. Robinson.[6] Such result is indeed drastic and places the state in a very disadvantageous position a full twenty-five years after the events in issue. However, we should not let considerations of relief affect our willingness to give heed to valid constitutional assertions.

5. An inquiry into criminal responsibility at the time of commission of a criminal act is, of course, of the same nature.

6. But see Clark v. Beto, 5th Cir. 1966, 359 F.2d 554.