**Huey R. LEE, Appellant,**

v.

**STATE OF ALABAMA, Appellee.**

**No. 22994.**

United States Court of Appeals
Fifth Circuit.

June 27, 1967.

Rehearing Denied Aug. 22, 1967.

Griffin B. Bell, Circuit Judge, dissented.

Huey R. Lee, Montgomery, Ala., pro se.

Walter Mark Anderson, III, Asst. Atty. Gen., Montgomery, Ala., MacDonald Gallion, Atty. Gen., and Robert F. Miller, Asst. Atty. Gen., for appellee.

## ON PETITION FOR REHEARING EN BANC

Before TUTTLE, Chief Judge, and BROWN, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER and SIMPSON, Circuit Judges.

TUTTLE, Chief Judge:

On July 6, 1942, Huey R. Lee, Jr. was arrested, confined in a jail of Barbour County, Alabama, and charged with murder in the first degree for the slaying of his father, Huey R. Lee, Sr. On July 13, 1942, one G. D. Boyd filed a request for an investigation as to the sanity of said Huey R. Lee, Jr. This request is authorized under Section 428 of Title 15 of the 1940 Code of Alabama, which provides as follows:

"§ 428. *Inquisition upon alleged insane prisoner; further proceedings.* —If any person in confinement, under indictment, or for want of bail for good behavior, or for keeping the peace, or appearing as a witness, or in consequence of any summary conviction, or by an order of any justice, appears to be insane, the judge of any court of record of the county where he is confined must institute a careful investigation, call a respectable physician and other credible witnesses, and if he deems it necessary, may call a jury, and for that purpose he is empowered to compel attendance of witnesses and jurors; and if it be satisfactorily proved that the person is insane, the judge may discharge him from imprisonment and order his safe custody and removal to the Alabama state hospitals, where he must remain until restored to his right mind; and then, if the judge shall have so directed, the superintendent must inform the judge and sheriff, whereupon the person must be remanded to prison, and criminal proceedings be resumed, or he be otherwise discharged." [1]

The hearing was conducted before the judge and a jury on July 20, 1942. Notwithstanding strong medical testimony to the contrary, the jury having heard evidence from seven physicians and seventeen lay witnesses returned a verdict reading: "We the jury find the defendant to be sane."

On October 20, 1942, the Grand Jury returned an indictment charging Lee with the murder of his father. Two days later, the Sheriff of the county, filed a request that Lee be sent to Bryce Hospital at Tuscaloosa, Alabama, for ob-

[1]. As pointed out by this court in an earlier appeal from a denial of habeas corpus, this request is shown by the record to have referred to Title 15, Sec. 428 of the 1940 Code of Alabama, it being there commented on that "that seems to be the applicable section rather than section 426, which would apply only when the confinement is 'under indictment.'" This is of considerable significance because, as will hereafter be pointed out, the Supreme Court of Alabama in its later consideration of the case stated that Lee had had a "sanity hearing" under Sec. 426. For purposes of comparison we here quote the provisions of Sec. 426:

"§ 426. *Inquisition in certain cases of felony; proceedings.*—If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct. If the jury shall find the accused sane at the time of their verdict, they shall make no other inquiry, and the trial in chief shall proceed. If they find that he is insane at that time, the court shall make an order committing him to the Alabama state hospitals, where he must remain until he is restored to his right mind. When the superintendent of the hospitals shall be of opinion that such person is so restored he shall forthwith, in writing, inform the judge and sheriff of such court of the fact; whereupon such person must be remanded to prison on an order of such judge, and the criminal proceedings resumed. In no event shall such person be set at large so long as such prosecution is pending, or so long as he continues to be insane.

servation, and accompanied his request with a report from Dr. W. D. Partlow, superintendent of the Alabama State Hospital that " * * * It is my professional opinion that there is reasonable ground to believe that said defendant was insane either at the time of the commission of the offense charged in said indictment, *or presently.*" (Emphasis added.)

Lee's attorneys filed a similar request. Acting under Section 425 of Title 15 of the 1940 Code of Alabama,[2] the judge entered an order in accordance with such requests. Lee remained in the Alabama State Hospital from October 24, 1942 to August 3, 1943. On July 21, 1943, Dr. W. D. Partlow, Dr. J. S. Tarwater and Dr. P. B. Mayfield, who constituted a commission on lunacy, submitted the following report:

"It is the opinion of each of us, and it is our opinion jointly and collectively, that the said Huey R. Lee, Jr., at the time of his admission to The Bryce Hospital, Tuscaloosa, Alabama, which is one of the Alabama State Hospitals, on October 24, 1942 was insane and that at all times continually from the date of admission to the present date of this report has been insane. It is our opinion that this case is a type of insanity characterized by both grandiose delusions and delusions of persecution. It is our opinion that he in his own estimation so magnifies the ego or self in importance as compared with every other person or consideration that when others with whom he has to deal fail to accept his viewpoint in their attitude toward him in compliance with his wishes or will, he immediately feels and decides such persons are his enemies and are endeavoring to persecute him. We are of the opinion further that his feelings and emotions are governed by these delusions of grandeur and of persecution, and that he, therefore, acts or endeav-

2. § 425. *Investigation of sanity of person charged with capital offense.*— Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialists practitioners in mental and nervous diseases, appointed by the judge or by the written report of the superintendent of the Alabama State hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect *his present criminal responsibility or his criminal responsibility at the time of the commission of the crime.* (Emphasis added.)

"Such defendant shall remain in the custody of the superintendent of the Ala- bama state hospitals and subject to the observation of and examination by such commission of lunacy for such length of time as may in the judgment of the commission of lunacy be necessary to determine his mental condition *so far as it affects his criminal responsibility.*

"As soon as such commission of lunacy has reached a conclusion, within the time and in the respect as hereinabove set forth, as to the mental condition of such defendant, it shall make a full written report thereof to the clerk of the court in which the indictment against said defendant is pending, which report shall be placed on file and be accessible to the court, to the solicitor and to the counsel for defendant.

"It shall be the duty of the clerk of said court upon receipt of said report to issue an order to the sheriff of the county directing that such defendant be remanded and removed to prison and that the criminal proceedings against him be resumed or be otherwise legally discharged.

"The expense of removing such defendant to and from the hospitals and of maintaining him while there confined, shall be paid in the same manner as provided by law in the case of persons adjudged to be of unsound mind following inquisition in the probate court."

ors to act under such emotions, ideas, beliefs and delusions to vindicate himself against those who, he believes, persecute or conspire to persecute him. We are further of the opinion that such ideas and beliefs, and the feelings and emotions incident thereto, so completely dominate and control him and determine his course of action whenever his will is not thwarted by others, as to be abnormal and thus render him abnormal mentally or insane to the extent that distinctly affects his present criminal responsibility and so affects such criminal responsibility at any time from the date of his admission to The Bryce Hospital to the present date of this report.

"Based upon our knowledge of the mental condition of said Huey R. Lee, Jr., from the date of his admission to The Bryce Hospital October 24, 1942, to the present date, based upon a conservative study of his case with other similar mental conditions which have come under our observation in the course of time, and based upon a study of the history of his case, including facts supplied as relative to the record of the crime of which he is charged, as shown in transcript of certain court records in his case as submitted to us for study, it is our further opinion that his mental condition as described above existed prior to his admission to The Bryce Hospital and prior to and at the time of the commission of the crime to the extent that it did affect his criminal responsibility at the time of the commission of the crime.

"Under the provisions of the same Section (425, Title 15, Code of Alabama 1940) above referred to, we understand that with the rendering of this report our obligation and that of the Alabama State Hospitals has been discharged and that, therefore, if it is the wish of the Court that the said Huey R. Lee, Jr. be detained longer in this institution as a patient it would be necessary for the Court, or some court jurisdiction, to issue a commitment or an order for the further detention of the said Huey R. Lee, Jr. in said Alabama State Hospitals."

On August 3, 1943, pursuant to an order of the trial court, the sheriff removed Lee from Bryce Hospital to the jail of Barbour County "to await further criminal proceedings against him." Lee was arraigned and called on to plead to the indictment on October 1, 1943 and the record discloses that three pleas were interposed for him:

"(1) Not guilty;

"(2) Not guilty by reason of insanity; and

"(3) Not guilty by reason of insanity at the time of the commission of the offense."

The case came on for trial on October 27, 1943, and Lee's counsel thus stated his pleas to the jury:

"By Mr. Lee: Gentlemen, to that indictment, the Defendant pleads not guilty. That plea puts in issue the material facts in the case. He also says that he is not guilty by reason of insanity, and that plea puts in issue the fact that whether or not, as we in our language sometimes express it, *the man was insane and incapable of committing the crime,* and under the Alabama laws did not commit any crime, and in this case we say that he is not guilty by reason of insanity.

"By the Court: You mean to say to the jury that he was insane at the time of the commission of the offense?

"By Mr. Lee: We don't want to differ with the Court, and we plead as the Court suggested, that he was insane at the time of the commission of the offense." [3] (Emphasis added.)

3. Section 423 of Title 15, 1940 Code of Alabama provides as follows:

"§ 423. *Insanity must be specially pleaded as a defense for crime.*— When the defense of insanity is set up in any criminal prosecution it must be by special plea, interposed at the time of arraignment and entered of record upon the docket of the court, which in substance shall be, 'not guilty by rea-

After a full trial, in which he was represented by counsel and testified in his own behalf,[4] Lee was convicted of murder in the first degree and his punishment fixed at life imprisonment. The judgment of conviction was affirmed by the Supreme Court of Alabama, Lee v. State, 1944, 246 Ala. 343, 20 So.2d 471 and certiorari was denied by the Supreme Court of the United States. Lee v. State of Alabama, 1944, 325 U.S. 888, 65 S.Ct. 1576, 89 L.Ed. 2002. In that direct appeal, *Lee did not raise the issue which is now presented to this court, which is his lack of mental capacity at the time of the trial to enable him to assist in his own defense.* The Alabama Supreme Court said: "The only defense supported by any evidence is that of not guilty by reason of insanity. This defense must be 'clearly proved to the reasonable satisfaction of the jury' and the burden is on the defendant to do so. Section 422, Title 15, Code; Boyle v. State, 229 Ala. 212, 154 So. 575. The burden so imposed is not denied by defendant and he offered much evidence to meet that burden and there was much offered in rebuttal by the State."

As has been pointed out by the Supreme Court of Alabama, the defense of "not guilty by reason of insanity," which is a statutory defense prescribed in Section 423 of Title 15, 1940 Code of Alabama, supra, footnote 2, does not present the issue to the trial court of the mental competency of the accused at the time of trial. Hawkins v. State, 267 Ala. 518, 103 So.2d 158. In that case the court said: "Upon his arraignment the defendant interposed the pleas of not guilty and not guilty by reason of insanity. Under these pleas the 'present' sanity of the defendant was not an issue. See Ex Parte Lee, 248 Ala. 246, 27 So. 2d 147; Jones v. State, 13 Ala. 153; U. S. v. Chisholm, [5 Cir.] 153 F. 808." Hawkins v. State, 103 So.2d 158, 161.

On January 16, 1946, Lee, represented by different attorneys, began his long series of efforts to obtain post-conviction relief. On that date he filed with the Supreme Court of Alabama his petition for leave to file in the Circuit Court of Barbour County a petition for writ of error of coram nobis. The Alabama Supreme Court recognized that it had jurisdiction to grant the relief sought upon the making of a proper case. It denied relief, however, after having outlined substantially the statement of facts which is contained above in this opinion. There appears, however, to be one clear misapprehension by the Supreme Court

---

son of insanity.' Such plea shall not preclude the usual plea of the general issue, which shall not, however, put in issue the question of the irresponsibility of the accused by reason of this alleged insanity, this question being triable only under the special plea."

4. His testimony was brief, and is here quoted:

"Huey R. Lee, Jr., the Defendant, who, first having been duly sworn, testfied as follows:

"Direct examination

"Q. Your name is Huey R. Lee, Jr.? A. Yes.

"Q. You are the Defendant in this case? A. Yes.

"Q. You are charged here with shooting your father, or knocking your father in the head with a shotgun. Did you do that or not? A. I have no recollection of it.

"Q. Now, did your mind at any time become blank? A. Well, if my mind became blank I don't suppose I would be expected to remember anything.

"Q. When did you learn that you were charged with this crime? A. In jail.

"Q. How long after you were brought to jail? A. Well, I don't know.

"Q. You don't know how long you had been in jail, how long after? A. No, sir.

"Q. Do you have any recollection of having that gun in your hand and the way you used it? A. No, sir.

"Q. You have no recollection of striking him in the head or anywhere else? A. No, sir.

"By Mr. Lee: Take him.

"By Mr. Borders: You just don't know anything about it?

"By the Witness: That is true.

"By Mr. Borders: That is all.

"The Defendant rests."

of Alabama, since it states that "On July 20, 1942, and under and by virtue of *the provisions of Sec. 426,* Title 15, Code of 1940, an inquisition as to the sanity of Huey R. Lee, Jr. was tried by a jury in the Circuit Court of Barbour County". (Emphasis added.) Ex Parte Lee, 27 So.2d 147. As we have stated above, this proceeding was under Section 428 and not 426 of the Code, a distinction, which will be the subject of discussion later on in this opinion.[5]

In its opinion, the Supreme Court of Alabama said: "Insanity existing at the time of the commission of an alleged criminal offense, when properly pleaded and proven, is a complete defense to an indictment charging that offense. Section 423, Title 15, Code of 1940. But insanity occurring subsequent to the commission of the alleged offense is no answer to an indictment charging that offense, and cannot be made the basis of a plea in bar of the prosecution. Jones v. State, 13 Ala. 153. But this is not to say that a defendant charged with a criminal offense, and who becomes insane after the commission of the alleged offense cannot suspend or postpone the trial of his cause until his sanity has been restored. This he may do under the specific procedure provided in section 426, Title 15, Code of 1940." 27 So. 2d 147 at p. 149.

The Court also said: "The benefits of section 426, supra, were invoked in petitioner's behalf on July 20, 1942, and at which proceeding the jury summoned to determine petitioner's sanity as of that time, returned the verdict that he was sane. * * * "

"It is further insisted that the attorneys representing petitioner on the trial for the offense charged in the indictment were negligent in failing to insist upon an inquiry into the 'present' sanity of the defendant before entering into [the] trial as provided by law. (Presumably 426, Title 15, Code of 1940).

"*One such inquiry had already been made.* It is not made to appear in the petition before us that the defendant became insane since that judgment was rendered. How many times such inquiries a defendant may make we need not now decide. Laying aside the question of whether petitioner is bound by the acts of his attorney (See Mitchell v. State, supra), or whether his negligence is a proper matter of inquiry on a proceeding for writ of error coram nobis, it is sufficient to say that on the record before us, negligence of defendant's counsel, who represented him at the trial of the main case, is not here shown." (Emphasis added.) Id. at 149, 50.

The Court ended its opinion by saying: "The substantiality of petitioner's claim is not shown to the satisfaction of this Court, *and in the exercise of the discretion vested in the Court in such matters* we are clear to the conclusion that permission to file a writ of error coram nobis in the lower court should be, and is denied." (Emphasis added.) Id. at 150.

Thus, at this stage of the proceedings, it is clear that the Alabama Supreme Court mistakenly stating that a Section 426 inquiry "had already been made" and without deciding whether a defendant had the right to subsequent inquiries if a substantial period elapsed before his trial, the court *exercised its discretion* to deny the writ of error coram nobis.

Three years later, Lee tried again. He filed a petition for habeas corpus in the Circuit Court of Montgomery County, Alabama. This petition was denied and the order was affirmed on appeal. Lee v. State, Ala.App.1949, 44 So.2d 606. Cert. den. by the Supreme Court of Alabama. Lee v. State, 1950, 253 Ala. 424, 44 So.2d 607. The Alabama Court of Appeals questioned whether habeas corpus was the proper method of proceeding, and indicated that coram nobis appeared to be the appropriate remedy. Never-

5. In the opinion on the direct appeal, the Supreme Court of Alabama had noted that the proceedings were under Sec. 428, 20 So.2d 471 at 472.

theless, the court decided the case on the ground that it was bound by the Alabama Supreme Court's decision in Ex Parte Lee, 248 Ala. 246, 27 So.2d 147, which we have just discussed.

Thus, the first uncritical assessment of the coram nobis case gave further precedential value to it. A decision by the Alabama Supreme Court which did not decide the precise issue now presented here, i. e., whether Lee was mentally competent to stand trial in October, 1943, closed the door of the Alabama courts to any further inquiry on this issue either by writ of coram nobis or by petition for habeas corpus. It is not difficult to understand, therefore, why his efforts since that time resulted in subsequent denials by the United States District Court for the Middle District of Alabama of federal habeas corpus release. The first of these occurred on September 11, 1950, CA 696-N and the second on November 18, 1957, CA 1388-N. Ultimately, Lee filed a third federal habeas corpus petition which was denied and, as pointed out by this court, speaking through Judge Rives, "The easy way of ruling upon [that] appeal would be simply to say that the District Court was not required to entertain a third application for habeas corpus." Nevertheless, this court said, however, "Declining to entertain a second, third or ninth application for habeas corpus involves the sound judicial discretion to be exercised with regard to what is right and in the interest of justice." Then, citing the example of O'Neal Massey, who, beginning in March, 1953, made persistent and repeated applications in many courts, both state and federal, until he finally secured a reversal from the Supreme Court,[6] the court said: "In the present case, not being entirely sat-isfied that the ends of justice had been served, we have given full and complete consideration to the appeal." Lee v. Wiman, 5 Cir. 1960, 280 F.2d 257, 263.

By the time this habeas corpus petition was filed, Lee began abusing his counsel and courts for a conspiracy to deny him justice, and he alleged "he was at those times in the absolute clutch of a conspiracy, a complete conspiracy in which both the court and his own counsel were parties." This court concluded that since no contention of this nature had previously been submitted to the Alabama courts, it should not be the basis of consideration on that pending appeal, but that the court should consider only the allegation touching on Lee's mental capacity to stand trial.

This court, after pointing out that "insanity" is a word of broad significance and of varied meanings, depending largely upon the transaction in relation to which it is employed, commented on the fact that both inquiries made, the one made before indictment and the one made immediately following indictment, dealt only with the question of "sanity" versus "insanity." As the court said, "Even the report of the lunacy commission, heretofore quoted on page 261 of 280 F.2d was addressed entirely to his 'criminal responsibility' rather than to his competency to understand the nature of the charge against him and to assist in his defense." Then, having said "Certainly the fact that the applicant testified reasonably, though briefly, in his own defense [7] is potent evidence that he was not mentally absent from his trial," [8] this court then stated that the Supreme Court of the United States had held that the Federal Constitution did not require a federal court to inquire into the question whether a state had actually ascertained

---

6. Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135.

7. See Footnote 3, supra.

8. As to the observed conduct of an accused on his own trial touching on his right to have this issue of his competence passed upon, the Supreme Court has now said in Pate v. Robinson, 383 U.S. 375, 386,

86 S.Ct. 836, 842, 15 L.Ed.2d 815: "While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue. [Cf.] C. J. Bishop v. United States, 350 U.S. 961 [76 S.Ct. 440, 100 L.Ed. 835]."

the mental capacity of the accused to stand trial when this issue is raised in federal habeas corpus, citing United States ex rel. Smith v. Baldi, 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549, and Massey v. Moore, 5 Cir., 1953, 205 F.2d 665, rev. 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135. The court then accepted the Alabama Supreme Court's statement that "[o]ne such inquiry had already been made. It is not made to appear in the petition before us that the defendant became insane since that judgment was rendered", as a basis for denying the relief, since this court said "[t]here is no indication that the condition found by the lunacy commission was of recent origin, or had arisen subsequent to the finding of the lay jury in July, 1942 that the applicant was sane." Thus, this court denied relief, partially on the ground that the Fourteenth Amendment did not require a resolution of the issue of mental capacity to stand trial by the state court when attacked in federal habeas corpus, and partially on the ground that a Section 426 inquiry into this fact issue had already been made and no evidence had been adduced to show a change in condition.

Taking his clue from the court's refusal to consider the conspiracy allegations because they had not been presented to a state court, Lee filed another petition for habeas corpus in the Circuit Court of Alabama, in which he, for the first time, alleged in the state court, "that there was conspiracy between counsel, who represented him at his trial for murder, and the judge who presided at his trial. The prisoner contends that because of this conspiracy he was convicted and is now deprived of liberty without the due process of law." The circuit court dismissed this complaint, and this order was affirmed on appeal to the Supreme Court of Alabama, that court saying: "[i]t is only when invalidity appears on the face of the proceedings that it may be impeached on habeas corpus." Lee v. Lee, 276 Ala. 206, 160 So.2d 490, 491.

The decision by the United States Supreme Court in the case of Pate v. Robinson, (1965) 383 U.S. 375, 86 S.Ct. 836, may have sparked the further effort made by Lee as evidenced by his continuing fight to establish his right to a factual determination of his mental capacity at the time of his trial. Again, the district court dismissed the petition for habeas corpus, without hearing, on the assumption that there were no issues remaining following the last decision of this court in 280 F.2d, which is discussed above. The petition, filed on April 15, 1965, was dismissed by order dated April 25, 1965. Misc. No. 181, Middle District of Alabama. Lee filed a motion for rehearing on May 6th, which was overruled and denied on May 10th. On May 18th he petitioned this court for a certificate of probable cause. This certificate was denied by an interim panel of this court on July 15, 1965. On August 3rd, the petitioner sent to the chief judge of this court a petition for a writ of habeas corpus, which, under section 2241, of Title 28 U.S.C.A., an individual circuit judge is authorized to consider. This judge, treating the petition as an application for issuance of a certificate of probable cause, which may also be granted by a single circuit judge, granted the certificate on August 24, 1965.

This then brings us to the present appeal, which was initially decided by an opinion of this court affirming the judgment of the trial court on August 25, 1966. 364 F.2d 945. Lee's petition for rehearing was denied by this court, speaking through the same panel, on February 1, 1967, 373 F.2d 82. Subsequently, the appellant again filed a petition for rehearing, requesting rehearing en banc and a majority of the members of the court on active service having decided in favor of this request, the judgment of this court of August 25, 1966, was reconsidered on briefs filed by the parties.

When the current case was disposed of by our court on the first occasion, the opinion of the court stated that the conspiracy issue had not been adequately

presented by federal allegations in the petition for habeas corpus and could not be considered. We then adhered to the earlier opinion in Lee v. Wiman, as to the "insanity" issue, the opinion which has been discussed above and affirmed the dismissal of the petition for habeas corpus by the trial court. Lee v. State of Alabama, 5 Cir., 1966, 364 F.2d 945. In the course of the opinion this court said: "This issue of insanity *at the time of trial* has repeatedly been decided adversely to the appellant by both the State Courts and the Federal Courts." (Emphasis added.) This statement is apparently based on the observation by the Alabama Supreme Court when the case was before it on petition for coram nobis that "one such [Section 426] inquiry had already been made," 27 So.2d at 150, and on the fact that the courts had subsequently refused to reopen the issue. As we have already pointed out, there had been only one factual determination of sanity, by a Section 428 hearing, made at a time fifteen months prior to the date of trial. The history of the litigation shows clearly that there has been no other factual ascertainment of Lee's "present" competence except that made under the provisions of Section 428 fifteen months before trial.

Upon motion for rehearing the panel of this court made it clear that in light of Pate v. Robinson, supra, there can be no doubt that a prisoner is entitled by federal habeas corpus to have a determination whether he had an adequate hearing in the state court as to his competence to stand trial and that absent such determination he is entitled to relief. Lee v. State of Alabama on Pet. for Rehearing, 5 Cir. 1967, 373 F.2d 82.

Thus, the court has already recognized that one of the bases for the earlier opinion of this court in 280 F.2d is no longer a bar to the grant of the relief sought by Lee.

We, therefore, must now come to the second basis of the earlier denial of relief, that is the issue of whether the hearing authorized and held under Section 428, of Title 15, of the Alabama Code of 1940, fifteen months before Lee was actually put on trial for his life, at which the jury made a finding that Lee was "sane," without more, sufficiently meets the requirement that when a prisoner, either state or federal, seeking post-conviction relief, asserts, with substantial facts to back up his allegation,[9] that at the time of the trial he was not mentally competent to stand trial, and that there was no resolution of that precise issue before he was tried, convicted and sentenced, the protection of the Fourteenth Amendment to the Constitution requires that such conviction and sentence be set aside unless upon adequate hearing it is shown that he was mentally competent to stand trial.

A majority of the members of this court are of the opinion that unless, somehow, there was a resolution of the issue of Lee's "present" competence to stand trial at or about the time he was tried on October 28, 1943, then he has been denied his constitutional rights unless it can be shown by the state through evidence available at this time and meeting appropriate standards of proof that in fact Lee was competent to stand trial on October 27, 1943. Other members of the court are not convinced that any further ascertainment of this issue need be made following the "sanity" determination by the jury in July, 1942. All members of the court, however, consider it necessary, in seeking to assure complete justice, that it be ascertained whether at or about the time of Lee's trial in 1943, there was any issue decided

---

9. Not only was it the unanimous opinion of the State sanity commission that in July before the October 1943 trial Lee was "insane," the Alabama Supreme Court, in the original appeal said, as to *all* the physicians and specialists who testified at the trial: "They all agreed that he was definitely a paranoiac, and that it was incurable. * * *

"There seems to be small doubt but that he had paranoia, beginning early in life. * * *"

by court or jury touching on his then competence to stand trial.

Not only is it clear that there was no separate hearing, as such, as contemplated by the provisions of the Alabama Code, (Section 426, Title 15 of the 1940 Code of Alabama) supra footnote one at or near the time of his trial, but it is equally clear that no comparable hearing was held at *any time* with respect to Lee's mental competence to stand trial. As has been pointed out above, the Alabama Supreme Court mistakenly thought that the provisions of Section 426 had been followed with respect to the sanity hearing convened for the specific purpose of ascertaining whether "the trial of [Lee] for such offense shall be suspended until a jury shall inquire into the facts of such sanity." This Section was not invoked, *and could not have been followed* because at the time of the initial "sanity" hearing, Lee had not been indicted and Section 426 specifically is limited in its application to an inquiry as to the sanity of any person *already in confinement under indictment,* and it is clearly directed to the ascertainment by a jury of the issue whether the trial should proceed.

█ In point of fact, Section 428, the section under which Lee's "sanity" was inquired into immediately after his arrest is not directed to the ability of the accused to stand trial at all. It is directed to the question whether he should be sent to the state hospital for treatment, then providing, however, that if the inquiry results in a verdict of sanity, as was the case here, then "the person must be remanded to prison, and criminal proceedings be resumed or he be otherwise discharged." The Alabama Supreme Court has described the purpose of the statute in Ex parte Garrett,

262 Ala. 25, 76 So.2d 681 (1954) as follows:

"As we view the statute and as seems to have been the import of the Trice decision, it is the product of society's humanitarian attitude toward a person in confinement and if in such condition and the person is mentally sick, its beneficent purpose is to provide machinery whereby he may be transferred to a hospital rather than remain in jail."

As has been pointed out above, immediately following Lee's indictment the appropriate public officials moved under Sec. 425 [10] to have an inquiry into his *mental condition* "and the existence of any mental disease or defect which would affect *his present criminal responsibility or his criminal responsibility at the time of the commission of the crime.*" Although this section speaks of the "mental condition" of the accused it seems clearly directed towards the specific inquiry whether an indicted person suffered from any mental disease or defect which would affect his *present criminal responsibility* or his *criminal responsibility at the time of the commission of the crime.*[11] It is plain that this section does not expressly require any determination by the lunacy commission as to the mental capacity of the accused person, already under indictment in a capital case, *to stand trial.*

It is Section 426, the section that the Supreme Court of Alabama mistakenly said had been applied in this case, that is explicitly directed to the inquiry with which we are now concerned. This section provides, "If any person charged with any felony be held in confinement under indictment, and the trial court [12] shall have reasonable ground to doubt his sanity, *the trial of such person for such offense shall be suspended until the*

---

10. See footnote 2.

11. We need not reach the question whether determination of a defendant's "mental condition" by a § 425 commission made on or about the time of trial may, either constitutionally or as a matter of Alabama statutes, alone serve as a deter-

mination of capacity to stand trial, serving in a sense as a procedure alternative to that of § 426. If the § 425 report had been so treated here it would establish *incapacity.*

12. Here for the first time we find the focus on a "trial."

*jury shall inquire into the fact of such sanity,* such jury to be empaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct. If the jury shall find the accused sane at the time of their verdict, they shall make no further inquiry, and *the trial in chief* shall proceed. If they find that he is insane at that time, the court shall make an order committing him to the Alabama state hospitals, where he must remain until he is restored to his right mind. When the superintendent of the hospitals shall be of opinion that such person is so restored he shall forthwith, in writing, inform the judge and sheriff of such court of the fact, whereupon such person must be remanded to prison on an order of such judge, and the criminal proceedings resumed. In no event shall such person be set at large as long as such prosecution is pending, or so long as he continues to be insane." (Emphasis added.)

It is clear that if this proceeding had been followed, then, prior to his trial in October, 1943, a separate jury would have been empanelled to inquire into his present "sanity" [13] but here there was no such proceeding followed. Section 425 requirements were followed (dealing with his criminal responsibility), resulting in a finding by the lunacy commission that Lee was, both at the time of the commission of the act and at the time of the inquiry after nine months of detention at the Alabama State Hospital, "insane." This report was filed with the clerk of the court in which the indictment was pending. Three months later Lee was tried and convicted. The report itself was not introduced in evidence, the Alabama cases holding that it is not to be used as evidence, but they hold "the purpose of said report is for the information of the presiding judge to aid him in determining what proceedings shall be taken in respect to the defendant after such report is filed. Benton

v. State, 245 Ala. 625, 18 So.2d 428. In this case, so far as appears thus far, *no* proceedings were taken except to place the defendant on trial.

If a jury empanelled as provided under Section 426 to inquire into the present sanity of Lee had agreed with the opinion of the state's lunacy commission, such jury would have found "that the said Huey R. Lee, Jr., at the time of his admission to the Brice Hospital, Tuscaloosa, Alabama, which is one of the Alabama State Hospitals, on October 24, 1942, was insane, and that at all times continually from the date of admission to the present date of this report, has been insane."

■ Of course, it takes no supreme wisdom to appreciate the value to an accused person to have a jury assessing his mental competency to stand trial, empanelled for that purpose alone, as contrasted with having the same jury that hears all of the evidence against him as a defendant in the criminal case itself appraise his present sanity. The Alabama laws clearly contemplate the more humane method of having the question of mental capacity to stand trial ascertained. It is clear from the language quoted next above that there is to be a separate trial of sanity from the "trial in chief." Here, so far as the record before us discloses, neither method was followed. The Supreme Court of Alabama has stated that the defense of insanity interposed to the indictment must be by utilizing the formula "not guilty by reason of insanity." See footnote 3, supra. The Alabama courts have held that the plea of not guilty by reason of insanity does not raise the issue of insanity at the time of trial. Hawkins v. State, supra. It seems clear from the colloquy between counsel and the trial court, quoted above, that no additional issue of the present sanity of Lee was presented.

---

13. The statute used the word "sanity" which we assume comprehends the mental capacity of the accused to stand trial, since this appears to be the sole purpose of this humane section.

Not much more need be said in this, perhaps, overlong opinion. Succinctly stated, the real merit of Lee's contention here is that there has not been at any time a hearing either in the Alabama courts or in the habeas corpus on his contention that on or about October 27 and 28, 1943 he lacked the requisite mental capacity to be put to trial in a capital case; and this contention is given substance when the latest opinion expressed by a lunacy commission, not otherwise acted upon, was that he was then "insane."

Although it seems clear, as we have stated, that, under Alabama law, at his actual trial there was not put in issue his then mental capacity, the state should be given an opportunity to demonstrate, if true, that such issue was in fact put in evidence, either by proper charge to the jury or by pretrial determination by the trial court, or otherwise.

■ We conclude that the prior decisions of this court must be vacated, the judgment of the trial court dismissing the petition must be reversed and the case remanded to the district court with directions that the state be afforded an opportunity promptly to demonstrate to the trial court that there has actually been a determination of Lee's mental capacity to stand trial on or about October 27 and 28, 1943, in default of which the trial court shall proceed to a disposition of the case in the light of the Supreme Court's decision in Pate v. Robinson, supra. This court concludes after careful consideration of the Supreme Court's decision and opinion in that case that it will be the duty of the trial court, under such circumstances, to decide whether it can conduct an adequate hearing on the question of Lee's competency to stand trial in 1943. If it cannot, it will be under the obligation to set aside the judgment of conviction and remand the case to the state courts for a new trial at which time it will, of course, be open to Lee to have an adequate hearing on his then mental capacity to stand trial.

■ Upon the remand of this case it will also be permissible for appellant to develop in a factual way any contention as to the alleged conspiracy which he has heretofore vaguely charged and to allege any other basis for habeas corpus relief which he considers appropriate.

The judgment is reversed and this case is remanded for further proceedings not inconsistent with this opinion. The judgment shall be issued forthwith.

TUTTLE, Chief Judge (concurring specially):

Having written the majority opinion, I nevertheless conclude, as do Judges Thornberry and Goldberg, that under the teachings of Pate v. Robinson, Lee's conviction should be set aside without a further hearing in the United States District Court. I, therefore, agree with and join in, the special concurring opinion authored by Judge Thornberry.

GEWIN, Circuit Judge (concurring in the result):

Limited to the peculiar facts and unusual circumstances disclosed by the record, I concur in the result.

GRIFFIN B. BELL, Circuit Judge (dissenting):

I respectfully dissent. I am not persuaded that the opinion of this court in Lee v. Wiman, 5 Cir., 1960, 280 F.2d 257, was incorrect on the precise issue of petitioner's asserted lack of mental capacity to stand trial. This issue had the detailed consideration of the court then and we followed that decision in the opinion of the court which is now vacated, Lee v. State of Alabama, 5 Cir., 1966, 364 F.2d 945, modified on rehearing, Lee v. State of Alabama, 5 Cir., 1967, 373 F.2d 82. Now the majority is overruling that decision despite the fact that the transcript of petitioner's state court trial is not before the court.

It goes without saying that the conviction of an accused person when he is legally incompetent violates due process of law. Pate v. Robinson, 1966,

383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. This proposition is not new to the law. 4 Blackstone's Comm. on the Law of England, pp. 24, 25. Indeed such a conviction would be more than a violation of due process of law; it would be inhumane and unworthy of a civilized people and is not to be countenanced. That, however, is not the question presented. Rather, the question is whether petitioner has made a showing, sufficient to warrant a hearing, that the state trial judge committed error and thus denied him due process of law by failing to set the necessary procedural machinery in motion to inquire into petitioner's mental capacity to stand trial.

It is undisputed that no such hearing was sought at the time, and that no hearing on the issue now presented has ever been accorded petitioner in the intervening period. Many judges have heard his plea over the years but until now, no court has found a prima facie showing that the facts known to the state trial judge suggested petitioner's incompetency or lack of capacity to stand trial to the degree necessary to have required such an inquiry.

The majority's error, it seems to me, flows from two basic flaws in reasoning. First, the holding in Pate v. Robinson, supra, is overly extended. That case, like this case, turns on its own peculiar facts. The court there had the trial transcript before it and it disclosed that a serious question as to Robinson's mental capacity to undergo trial was in issue before the trial court. This fact and the subsidiary facts on capacity convinced the court that the trial court should have conducted a separate hearing on the issue. The defense there was based on insanity at the time of the commission of the offense and also insanity at the time of trial.

Here the defense was based purely on insanity at the time of the offense. Petitioner had two jury trials on this question, the first being a separate hearing wherein he was found sane by a jury, and the other being the trial on the merits where his sole defense was insanity at the time he murdered his father. See the opinion of the Alabama Supreme Court on the appeal from the conviction. Lee v. State, 1944, 246 Ala. 343, 20 So.2d 471. That opinion states that much evidence was offered on the issue of sanity at the time of the commission of the offense and that all of the experts agreed that petitioner was an incurable paranoiac. And, as the majority here points out, the state trial court, immediately prior to the trial on the merits, had the report of the Alabama Lunacy Commission before it. It stated that petitioner was insane at the time he committed the offense and at the time of examination which was some three months before the trial. Without more, this would indicate that appellant was mentally incompetent to stand trial but there is more.

As was pointed out in Lee v. Wiman, supra, the report of the Lunacy Commission, like the evidence on the trial, was addressed to the question of mental accountability for the commission of the crime. The majority is satisfied to stop at this point and say that these facts necessarily show that the state trial court should have required a separate inquiry into appellant's capacity to undergo trial. This is simply not the law and the egregious error in holding otherwise no doubt stems from the second flaw in reasoning.

The majority opinion wholly ignores the settled difference between the degree of capacity involved in resolving mental accountability for the commission of an offense and that required to warrant postponing a trial based on lack of mental capacity to undergo trial. In Dusky v. United States, 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, the court stated the test to determine mental capacity to stand trial as being whether the defendant " * * * has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understand-

ing of the proceedings against him." In James v. Boles, 4 Cir., 1964, 339 F.2d 431, the court citing Lyles v. United States, 1957, 103 U.S.App.D.C. 22, 254 F.2d 725, 729, 730, pointed out that a criminal defendant may have a mental disease, and the mental disease may have been the cause of his criminal act, and he may be suffering from the same disease at the time of his trial, but he may nevertheless be competent to stand trial. The test was stated as being whether he can understand the nature of the charges against him and can assist in his defense. In Lee v. Wiman, supra, this court noted the difference in the tests to be applied, and rejected petitioner's claim that he was then entitled to a hearing on his competency to stand trial. The court stated that the claim could be sustained only by ignoring completely the test of insanity which would preclude a person accused of a crime from being put on trial. We will not detail the factual basis for the court's conclusion in this regard for it is well stated in the opinion.

It is sufficient to say that petitioner was a member of a prominent Alabama family. He was tried in his home county. He was not indigent. The opinion on the appeal of the case on the merits, Lee v. State, supra, indicates that he received the full protection of the law. There was not the slightest suggestion, as distinguished from Pate v. Robinson, supra, that his mental capacity to undergo trial was in doubt. He was above average in intelligence, had attended college, and testified in a clear and lucid manner that he had no recollection of killing his father. It was later, when he was represented by new counsel, that the point was first made that there should have been an inquiry into his capacity to undergo

trial. Ex parte Lee, 1946, 248 Ala. 246, 27 So.2d 147. The point was asserted as a basis for a claim of negligence on the part of trial counsel and not as an error on the part of the state trial court. It was rejected by the state court.

As the years have passed, petition has followed petition in the Federal courts and relief on the same question has been repeatedly denied without a hearing. Undoubtedly Pate v. Robinson gave petitioner renewed hope but it changed neither the law nor the facts. It did add a new procedure of substituting a new trial for a present hearing in the habeas court on past incapacity and it remains to be seen whether this is a rule without exceptions. It also remains to be seen whether the rule fashioned by the majority here is to have exceptions. If it stands it will open prison doors for anyone who on his trial asserted a substantial defense based on a lack of mental accountability but who did not assert that he was incompetent to undergo trial. The evidence on the issue of mental accountability will not furnish, *ipso facto*, the basis for holding the trial court in error where no separate hearing on the separate question of mental capacity to stand trial was held. All that is left then, as here, will be a determination by the habeas court of whether it can presently conduct an adequate hearing on that capacity question; if not, Pate v. Robinson applies and the alternative is a new trial or discharge.

I would require more of a petitioner than this. Substantial evidence to show that he could not understand the charge against him or that he could not assist in his defense should be the minimum; that has neither been required nor shown in this case.[1]

---

1. The suggestion of petitioner having suffered a great wrong over the years as a result of the citation by the Supreme Court of Alabama in Ex parte Lee, 27 So. 2d 147, of Title 15, § 426 instead of Title 15, § 428, Code of Alabama, is a mere makeweight, although, I hasten to add,

I am sure it is not intended as such. No court since then has ever recited that a § 426 hearing was accorded petitioner. The fact, as stated, is that he has never had a hearing insofar as the record discloses in any court on the question of his mental capacity to undergo trial.

THORNBERRY, Circuit Judge (concurring specially):

I agree with the majority that the judgment of the trial court dismissing Lee's habeas corpus petition must be reversed. I feel compelled, however, to respectfully set down my views as to the relief that may properly be granted by this Court in light of Pate v. Robinson, 1966, 383 U.S. 375, 86 S.Ct. 836.[1]

In Pate v. Robinson, the factual situation was as follows: Robinson was convicted in the Illinois courts in 1959 for the murder of his common-law wife. The only defense raised at Robinson's trial was insanity at the time of the offense. The issue of competence to stand trial, however, was also raised, but was decided adversely to Robinson by the trial court. Upon appeal, Robinson again raised the issue of competency. The Illinois Supreme Court, however, affirmed the conviction, finding that a hearing on mental capacity to stand trial had not been requested and that the evidence failed to raise sufficient doubt as to Robinson's competence to require the trial court to conduct a hearing on its own motion. People v. Robinson, 1961, 22 Ill.2d 162, 174 N.E.2d 820. After certiorari was denied by the United States Supreme Court, Robinson filed a habeas corpus petition in the United States District Court, which was denied without a hearing. The Seventh Circuit Court of Appeals reversed. United States ex rel. Robinson v. Pate, 7th Cir. 1965, 345 F.2d 691. The order of remand instructed the district court to determine upon a hearing whether Robinson's constitution-al rights had been abridged. On certiorari, the Supreme Court held that Robinson had been denied due process by the failure of the state to grant a hearing upon the issue of competency to stand trial. Concluding that a meaningful determination of that issue could no longer be made, the Court ordered Robinson's release, subject to retrial by the state.

In reaching this result, the Court reasoned:

It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That Robinson's hearing would be held six years after the fact aggravates these difficulties. This need for concurrent determination distinguishes the present case from Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), where we held that on remand the State could discharge its constitutional obligation by giving the accused a separate hearing on the voluntariness of his confession.

383 U.S. at 387, 86 S.Ct. at 843.[2]

---

1. My views in this matter were initially expressed in a dissenting opinion to the denial of Lee's motion for rehearing rendered by the panel of this Court that originally heard this appeal. Lee v. State of Alabama, 5th Cir. 1967, 373 F.2d 82.

2. In Dusky v. United States, supra, the Supreme Court reversed a federal conviction on the ground that the record contained insufficient evidence to support the finding of the trial court that the defendant was competent to stand trial. In refusing to remand for a hearing on the question of the defendant's competency at the time of his original trial, the Court stated:

In view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and *the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago*, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new

Applying the rationale of the Supreme Court in Pate v. Robinson, and comparing the factual context in which we now act to that presented in *Robinson,* I am convinced that the relief ordered by the majority of this Court is improper.[3] Clearly the primary impediment to an after-the-fact determination of competency is the passage of time. The Supreme Court in *Robinson* considered a passage of six years as sufficient to foreclose any such determination. By its order in the present case, the majority would authorize a federal district court to determine an individual's competency to stand trial fully twenty-five years after the trial took place. If the language of *Robinson* quoted above is to be accorded any significance, it must certainly be viewed as standing for the proposition that a meaningful hearing upon the question of Lee's competency on October 27, 1943, cannot be had in 1967.[4]

Aside from the difference in the length of time since conviction, there is only one significant factual distinction between the instant case and *Robinson.* Robinson, unlike Lee, asserted a plea of incompetency throughout trial and upon direct appeal. This factual distinction is of no significance to the resolution of the merits of Lee's claim since the issue he raises cannot be waived. Lee v. State of Alabama, 5th Cir. 1967, 373 F.2d 82 (On Motion for

Rehearing, Thornberry, J., dissenting). With regard to the issue of appropriate relief, however, this distinction supports rather than detracts from the appropriateness of, and the necessity for, the remedy afforded in *Robinson.* There, the Supreme Court indicated that the record of the state proceedings on or about the date of trial constituted the sole basis for any after-the-fact determination of competency. It would seem evident that when a defendant raises the issue of competency at his trial, the record will ordinarily lend itself to a more satisfactory after-the-fact resolution of that issue than if it had not been raised. A reading of *Robinson* indicates that, if the Supreme Court had been persuaded to allow a hearing on competency, the record available to the lower court for that purpose would have been superior to that upon which such a determination in the instant case would have to be based. Therefore, the Court's refusal to allow such a resolution in *Robinson* certainly must be viewed as strongly indicating that the action of this Court is improper.

What has been said above demonstrates why Pate v. Robinson forecloses any present inquiry into Lee's competency at the time of his trial. Therefore, this Court's order in that regard is in error. I also view as inappropriate a remand to the district court for the

---

hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent.

362 U.S. at 403, 80 S.Ct. at 789, 4 L.Ed. 2d at 825 (Emphasis added.)

3. As I read the majority opinion, the district court is instructed upon remand to make at least one, and possibly three, factual determinations. The questions the court must answer are:

(1) Was there, in fact, a constitutionally adequate determination in the state court of Lee's capacity to stand trial on or about October 27, 1943?

If not,

(2) Can the district court at the present time conduct an adequate hearing on the question of Lee's competency to stand trial on October 27, 1943?

If it cannot, then Lee must be released subject to retrial.

If it can,

(3) Was Lee in fact mentally competent to stand trial on October 27, 1943? As will be developed, the second and third propositions, dealing with the actual factual determination of Lee's competency in 1943, are clearly foreclosed by *Robinson*; and the first proposition can and should be answered by this Court on the record before it.

4. This is not to say that *Robinson* summarily forecloses in all cases the possibility of a post-conviction hearing on the issue of competency which satisfies constitutional requirements. I am convinced, however, that *Robinson* unequivocally states that such a hearing is not possible in the instant case.

purpose of affording the state a further opportunity to demonstrate that the question of Lee's competency was in some way raised and resolved at the time of his trial. Lee has raised the issue of incompetency in three separate habeas corpus petitions and on no occasion has the state pointed to the existence of any evidence indicating a resolution of this issue at or about the date of trial. The record before this Court is entirely devoid of any such evidence, or the assertion that any exists. Furthermore, the majority points out that Lee was never given a hearing under § 426, the only statutory provision dealing with an inquiry into a defendant's competency. Thus, any determination of competency, the existence of which the state is now given the opportunity to demonstrate, must have taken some form other than a hearing—the majority suggests the possibility of a pretrial determination by the trial court, or resolution by proper charge to the jury in the trial-in-chief.[5] The absence of any such determination is so clear,[6] however, that I consider the majority action in this regard as inappropriate. The majority's desire to afford the state every opportunity to demonstrate that

there occurred a constitutionally adequate inquiry into the issue of Lee's competency is an admirable expression of the desire to give heed to that delicate balance between the rights and powers of the states and the national government that characterizes our federal system. In this instance, however, the concern for the proper limitations upon federal power is overbalanced by the right of the petitioner to have an end to his twenty-one years of fruitless pursuit of his constitutional rights in both federal and state courts. A remand to the district court for determination of an issue that is now so clear will only result in added delay of final vindication of Lee's rights.

For the reasons stated above, I would reverse with directions to the district court to order Lee's release, conditioned upon the right of the state to retry him within a reasonable time.

GOLDBERG, Circuit Judge (concurring specially):

I agree with, and concur in, Judge Thornberry's specially concurring opinion.

Rehearing denied; BELL, C. J., dissenting.

---

5. It has been held on several occasions that where a state by statute provides for a separate jury determination of the issue of a defendant's competency, a failure to follow the statutory procedure is a denial of due process. United States v. Pate, 7th Cir. 1965, 345 F.2d 691, 695; Thomas v. Cunningham, 4th Cir. 1963, 313 F.2d 934, 938–39. The Alabama courts, however, have viewed the invocation of § 426 as discretionary with the trial judge, although no alternative procedure for determination of capacity is provided for by statute. Ex parte Bush, 1945, 247 Ala. 351, 24 So.2d 353; Sanders v. State, Ala.Ct.App.1964, 42 Ala.App. 419, 167 So.2d 174. Even still, on the facts of this case, I would hold that in light of the evidence before the trial court, the failure to invoke the § 426 procedure constituted an abuse of discretion and a denial of due process. Neither alternative suggested by the majority

can, in my mind, be viewed as compatible with due process in view of the fact that the § 426 procedure was available and there was strong evidence before the trial court of Lee's mental imbalance.

6. Aside from the fact that there is not even a hint of any such determination in the record before us, it should also be noted that when this issue was presented to the Alabama Supreme Court by a petition for writ of error coram nobis, Ex parte Lee, Ala.1946, 27 So.2d 147, that court alluded in no way to any determination of Lee's present sanity other than the § 428 jury verdict of July 20, 1942. A reading of the discussion of the Alabama Supreme Court, id. at 149–50, makes it clear that if there had been any determination of Lee's competency at the time of trial, the court would have made reference to it in refuting Lee's claim.