## ANDREAS GUAGANDO V. THE STATE.

1. CONTINUANCE—DUE DILIGENCE.—An affidavit for a continuance, on account of the absence of a witness, and made by a defendant charged with a felony, alleged that the residence of the witness was unknown, that attachments had been issued to A and B counties, but failed to state that he was believed to reside in either county, and which further stated that the witness could not be found in C county, where he was supposed to reside : *Held,* insufficient.

2. INSANITY, WHEN ISSUE OF, TRIED IN A CRIMINAL CAUSE.—When an affidavit is made by a respectable person that a defendant charged with crime has become insane, a jury should be impaneled to try the issue of insanity before proceeding with the cause, and this though the party making the affidavit is unknown to those in attendance on court.

3. INSANITY.—The question to be determined on a plea of insanity is, "is the accused mentally competent to make a rational defense;" and the error in refusing to submit this issue on a plea of insanity, supported by affidavit filed before trial, is not cured by trying the issue of insanity after trial and conviction.

APPEAL from Guadalupe.   Tried below before the Hon. J. P. White.

Andreas Guagando was convicted for the murder of Salome Fuentes, in Guadalupe county, on the night of November 9, 1873.

After the defendant's application for continuance had been overruled and a jury selected, his counsel presented to the court the affidavit of Kossuth Fuentes, that the defendant was then insane, and asked leave to file a plea suggesting insanity, based on the affidavit, and that the trial be postponed until the question of insanity could be determined.

This application was refused for reasons stated at length by the judge in the bill of exception taken by defendant's counsel. The reasons given for the refusal were the following:

"1. Because it appeared to the court that the party making the affidavit was a stranger (a Mexican) in the country, and unknown to any citizen of Guadalupe county.

"2. Because, when the case was called for trial at 9 o'clock on the morning of the day of trial, the defendant, after his motion for a continuance had been overruled, had selected a jury, the jury had been impaneled, the defendant had been arraigned, and pleaded not guilty, and at the request of counsel for defendant, the case was then postponed until 2 o'clock p. m., to enable the counsel to consult with their client and his witnesses. At 2 o'clock p. m., when the case was again called, this application was made.

"3. Because it appears that the defendant had been indicted December 8, 1873; that he had been arrested March 16, 1874; that on the 7th day of July, 1874, counsel had been assigned defendant; that on July 11, 1874, a special venire had been ordered; that on July 17, 1874, a *nolle prosequi* was entered in that case because of a misnomer of the deceased; that a second indictment was returned on the 16th July, 1874; that the same attorney who represented defendant in his first case appeared as his counsel in the second, and asked that additional counsel be assigned, which was done."

It was further stated by the court, in refusing the application, that the question of insanity would be tried in case the defendant was convicted before a judgment would be rendered on the verdict.

The defendant was found guilty of murder in the first degree. A jury was afterwards sworn to determine the question of defendant's sanity at the time of the trial, &c. Six non-professional witnesses, who knew the prisoner

well, testified to their belief that he was periodically insane, and that he was then insane. They testified to the effect that he was a Mexican of good family, and of more than ordinary culture; that his insanity was indicated by a tendency to be alone; that on such occasions he would not recognize his most intimate friends; would do without food for a long time, and would walk incessantly, making sudden and unnecessary journeys, walking to Mexico, &c. (The testimony of the State disclosed that for four hours preceding the homicide the defendant was engaged in walking to and fro in front of a house where a dance was progressing, after which, without a quarrel or known cause for strife, he stabbed the deceased and killed him.)

Four physicians were examined as experts, who seem to have had access to the prisoner for one hour and a half. Their testimony will be found sufficiently stated in the opinion.

No brief of appellant's counsel received.

*George Clark*, *Attorney General*, for the State.

DEVINE, ASSOCIATE JUSTICE.—Appellant was indicted, charged with the murder of Salome Fuentes, and has appealed from a judgment of murder in the first degree.

The several bills of exception, motion for a new trial, and the assignment of errors, present the questions on which a reversal of the judgment of the District Court is asked.

The first assignment of error, that " the court erred in overruling defendant's motion for a continuance," cannot be sustained. The affidavit for a continuance states that the residence of the witness, whose absence was the alleged ground of continuance, was unknown, and that attachments had issued to Bexar and Wilson counties. It was not stated even that he was supposed to be in either of these counties. Neither was it stated when the attach-

ments had issued, or when applied for. The affidavit further stated "that said witness cannot be found in Guadalupe county, where he is supposed to reside," but omitted to state that a subpœna had issued to Guadalupe county for this witness. The bill of exceptions No. 1 shows that this witness had been served with a subpœna in Guadalupe county, a short time before, to testify on behalf of defendant on this identical charge of murder, under an indictment which had been set aside for a misnomer. The affidavit not showing due diligence, the motion for a continuance was properly overruled.

The second assignment of error is, that "the court erred in first refusing to consider the defendant's plea of insanity before the trial on the indictment for murder." The bill of exceptions taken to the refusal of the judge to permit the plea of insanity to be filed, and the action of the court and counsel on this subject, show a misapprehension of the law on this question. The statement or explanation in bill of exceptions No. 2, that the person who made affidavit to the insanity of defendant was a stranger, and unknown to any of the citizens of the county, means doubtless that he was unknown to those in court or such citizens as they may have conversed with on that subject, and was not a sufficient reason to refuse the filing of the plea of insanity, when the question was presented by the counsel for the accused.

The affidavit was not at all necessary. Art. 781 and the ten succeeding articles of the Code of Criminal Procedure, under some of which the court seems to have acted after the conviction of appellant, do not constitute the rule which applies before the trial on an indictment. They relate to and are made for the government of the court on a question of insanity presented on behalf of a defendant *after conviction or judgment.* Art. 781 of the Code of Criminal Procedure declares: "If it be made known to the court, at any time *after* conviction, or if the court has good reason to believe a defendant is insane, a jury shall be impaneled

to try the issue." Art. 782 declares that: "Information to the court as to the insanity of a defendant may be given by the written affidavit of any respectable person, setting forth that there is good reason to believe that the defendant has become insane."

The question, however, of present insanity is entirely distinct from the question of insanity raised after conviction or judgment, and to which art. 781 and succeeding articles of the Code of Criminal Procedure have reference, and should have been determined before trial on the indictment.

The statement that the cause was called for trial at 9 o'clock a. m. on the morning of the day of trial; the defendant's motion for a continuance heard and overruled; that a jury had been selected and impaneled, the defendant arraigned, and a plea of not guilty entered, and the postponing of the case until 2 o'clock p. m., to enable counsel to consult with their client and his witnesses, do not afford ground for refusing the defendant's counsel leave to file a plea setting up the then insane state of defendant's mind.

Allowing the usual time for dinner, no time had been idly consumed by counsel in court, or much time spent in consultation with their client or his witnesses. The selection of the jury and other proceedings had in this case show a more rapid proceeding than is usual in capital felonies.

The question presented was, "Is the accused mentally competent to make a rational defense?" (2 Bishop's Cr. Pro., sec. 667; Whart. Am. Cr. Law, 54; Freeman *v*. The People, 4 Denio, 10.) And the right to have this fact determined before proceeding with the trial for murder is given to a defendant on whose behalf such a plea is presented. Art. 41 of the Criminal Code (Pas. Dig., art. 1643) declares that: "No person who becomes insane after he committed an offense shall be tried for the same while in such condition." The third assignment, that "the court

erred in overruling defendant's motion for a new trial on the plea of insanity," may be considered in connection with assignment of error No. 2, or refusal of the court to permit defendant's counsel to raise, on the plea of insanity, that question before the trial on the indictment for murder.

The judge, in refusing to have the question of insanity heard before trial, evidently believed that all the legal rights of the accused would be secured to him, as seen by the bill of exceptions, where it recites, "it was further stated by the court that the question of insanity would be tried before the judgment was rendered in the case, should the defendant be convicted," and that the insanity of the accused, *before* the killing of Fuentes, was a question to be considered, appears from the special issues, or questions presented for the consideration of the jury on the trial, on the question of defendant's insanity the day after his conviction for murder, these issues being: 1. "Is Andreas Guagando sane or insane at this time? 2. Was Andreas Guagando sane or insane on yesterday, the day on which he was tried? 3. Was Andreas Guagando sane or insane on the night of the killing Salome Fuentes? 4. Has Andreas Guagando ever been insane; if so, when, and for how long, and to what extent?"

The fact that the jury trying these issues found in response to them—1st, that the appellant was then sane; 2d, that he was sane on the day of the trial for murder; 3d, that he was sane on the night of the killing Salome Fuentes; 4, that he was of unsound mind for two or three days about two years ago—does not cure the error. These proceedings, after trial and conviction, relate to the question of insanity, presented to the court for its action after conviction and judgment, under article 781 and succeeding ones of Code of Criminal Procedure. This trial of insanity cannot be held to relate back and supply the omission to have the question tried before the trial on the indictment. The evidence adduced on the trial of the plea

of insanity, even were the law requiring this inquiry to be had before trial expressed in doubtful terms, is not of that character which would materially weaken the force of these assignments of error.

Apart from the testimony of these witnesses well acquainted with the accused, two of them having known him for several years, all of them testifying to occasional fits or spells of insanity, J. B. Polley testified to an acquaintance with the defendant of two or three years, and to his being insane or crazy while in the employment of witness' mother; to his belief in his insanity, and to his having urged his mother to discharge him on that account; defendant being in his employ at one time, and that he believed him to be insane. One of the counsel appointed by the court to defend the prisoner testified to his conversing with him through the medium of an interpreter, and of his utter inability to obtain the slightest information from him as regarding his witnesses, or any aid from him in making his defense, the accused not even giving him the name of a single witness for his defense. Of the four physicians comprising the medical board who questioned the accused for an hour and a half, two stated, from the questions put to the accused and his apt replies, they believed him to be of sane mind. The third member of the board stated "he did not believe the prisoner was sane during the hour and a half of the examination; that there was something peculiar about the expression of the eyes of the defendant, but that it might be accounted for by the excitement and uneasiness attendant upon a trial for life."

Another witness who visited the accused in jail after conviction, and informed him he was to be executed in three hours, stated that accused did not manifest the least emotion; that he believes accused believed him when he told him he was to be executed; thinks the manner in which prisoner received the information is to the mind of witness no evidence of his sanity or insanity. The fourth member

of the board of medical examiners stated that the board "applied no medical test of insanity to the defendant; that the examination of defendant lasted one hour and a half; that the board did not examine him physically at all; that they did not touch him; that the examination, so far as testing the insanity of defendant, was not worth a fig; that during the hour and a half witness did not detect any evidence of insanity in defendant."

These facts, we think, would have justified the granting a new trial, and they show, in our opinion, well-founded reasons for the preliminary inquiry required by art. 41 of the Criminal Code.

While the enforcement of the criminal law is absolutely necessary for the protection of person and property, we are satisfied that its permanent efficiency will be found in a close adherence to its provisions, and that no person can be properly punished when its terms or its spirit is departed from.

While a large discretion is necessarily vested in the district judge in directing the cause of a trial, and his position presents superior facilities for the forming a correct judgment, yet when it appears not only that the law was overlooked in this case, but that in addition to this the accused is likely to have been deprived of the benefit of the evidence touching his insanity, by reason of the statement of the court that, if convicted, the question of defendant's insanity could then be inquired into, it is likely the prisoner was, from this fact, deprived of this evidence on his trial for murder; and it is only on this belief that we can account for the omission of defendant's counsel (in their zealous efforts in his behalf) to introduce the evidence given in after the trial, which evidence could have been introduced under the plea of not guilty. Had this evidence been before the jury on the trial for murder, we are not prepared to declare what influence it may have had on the jury. It might have led to a different verdict, either as re-

garded the appellant's guilt or the degree of murder under a verdict of guilty.

The court, under all the circumstances connected with the trial and the evidence on the question of insanity, should have granted a new trial.

The fourth assignment of error respecting a new trial has been disposed of, and it only remains to consider the fifth assignment of error, that " the court erred in its charge to the jury on the indictment for murder." While the charge of the court, on the trial under the indictment for murder, presented the law of the case arising from the facts in evidence in clear and forcible terms, and on the question of a reasonable doubt directed an acquittal, it yet omitted to call the attention of the jury to the fact that, although satisfied from the evidence of the defendant being guilty of murder, yet if a reasonable doubt existed as to the crime being murder of the first or murder of the second degree, that the accused would be entitled to the benefit of such doubt, and should be found only guilty of murder in the second degree.

The last paragraph in the charge is open to the objection of its pointing with directness to murder in the first degree, in such a manner as to lead the mind of the jury to a consideration of the case with reference to that degree of murder and no other.

The sixth assignment of error is not necessary to be noticed.

The judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.