Jesse **KIBERT**, Petitioner,

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Respondent.**

**Civ. A. No. 66-C-98-A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Nov. 8, 1966.

No appearance for petitioner.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus, filed *in forma pauperis* by a State prisoner pursuant to the provisions of 28 U.S.C. § 2254.

The facts of petitioner's case may be stated briefly. On April 25, 1959, petitioner's aunt and uncle were murdered in Lee County, Virginia. Petitioner and his two brothers were arrested in Claiborne County, Tennessee, the following day and promptly extradited. All procedures were properly conducted and the three men were indicted on two counts each of First Degree Murder on June 2, 1959. Trial was set for June 4. During the entire period following extradition, petitioner was confined in the Lee County Jail, separate and apart from his brothers.

It was decided by the defendants with the aid of counsel of their own choosing shortly before the scheduled trial that all three defendants would enter guilty pleas to both counts. They had ample opportunity to discuss their pleas with their attorneys, members of their family and each other. They were fully apprised of the serious nature of the charges and of the implications of their pleas. During this discussion petitioner had almost nothing to say, even in response to direct questions by his family and attorneys. On two occasions when asked if he specifically wished to enter a plea of guilty to the charges, he nodded his head affirmatively.

Petitioner received a life sentence on each count, to be served concurrently. After sentence was pronounced, petitioner was returned to the Lee County Jail until he was transferred to the Virginia State Penitentiary in Richmond on June 20, 1959. Shortly after arrival petitioner was assigned to the hospital section of the penitentiary and placed under the supervision of Dr. Harry E. Brick, institutional psychiatrist. On September 23, 1959, petitioner was committed to Southwestern State Hospital in Marion, Virginia, because he was mentally ill, with a diagnosis of "schizophrenic reaction undifferentiated type." He remained there under the supervision of Dr. Joseph R. Blalock until his discharge and return to the penitentiary on April 5, 1961.

No appeal was taken from petitioner's 1959 conviction. Following his discharge from Southwestern State Hospital in 1961, petitioner filed a petition for writ of habeas corpus in the Circuit Court of Lee County. On January 29, 1962, a full hearing was obtained on substantially the same petition before this court. Petitioner was represented by court-appointed counsel. Following presentation of all the evidence, the petition was denied. The decision was appealed to the Supreme Court of Appeals of Virginia on writ of error, which was dismissed August 31, 1962.

Petitioner now urges this court to grant his petition alleging that he was insane prior to and during his June 4, 1959 trial and for a time thereafter. He states that he was in a daze and is unable to remember his trial. He contends that he did not understand the charges against him or the plea that was entered by counsel of his own choosing. Petitioner further argues that his trial and conviction were illegal and in violation of his Constitutional rights guaranteeing him a fair and impartial trial.

█ Although petitioner never took direct appeal from his conviction, this court will entertain a petition for writ of habeas corpus based upon a claim of insanity at the time of trial in a state court. Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963).

█ It is settled law that the conviction of an accused while legally incompetent violates due process. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). Code of Virginia, 1950 § 19.1–227, provides that no person will stand trial for a criminal offense while he is insane. It does not aid respondent to answer that petitioner is properly within his custody on the basis of his 1959 conviction if the alleged insanity charge is valid, because Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), maintains that it is contradictory to argue that a defendant may be incompetent and intelligently waive his right to have the court determine his capacity to stand trial. Therefore, this court will give maximum effect to petitioner's allegation that he was incompetent to stand trial and examine the recent decisions in this light.

In Timmons v. Peyton, 360 F.2d 327 (4th Cir. 1966), it was held that there had been a violation of the defendant's Constitutional rights to due process. The defendant was of low mentality with a history of mental disorders. The case can be distinguished from the case at bar, where petitioner has no known or alleged history of mental illness prior to his arrest and was adequately represented by counsel of his own choosing during the period of incarceration in the county jail.

Thomas v. Cunningham, supra, presents a similar situation to the present case, because defendant failed to appeal his conviction, and subsequently sought habeas corpus in Federal Court. The Circuit Court of Appeals remanded the case for a hearing by the District Court. However, no previous hearing had been conducted. The case is further distinguishable because the accused there filed motion pursuant to Virginia law for a pre-trial examination and diagnosis as to his mental capacity to stand trial, which was denied despite uncontradicted medical testimony that the defendant was presently in the grip of psychosis. It

was held that the trial court's refusal to suspend the proceedings to allow for the examination sought was so arbitrary as to be a denial of due process.

The problem is more difficult where no hearing on capacity to stand trial was requested. The Illinois Supreme Court affirmed a 1959 conviction on the ground no hearing on mental capacity to stand trial had been requested, but the Supreme Court of the United States reversed and remanded for a new trial, subject to a possible pre-trial examination. With the absence of an examination in the earlier trial, it would be impossible to validly determine the defendant's mental capacity seven years later. Pate v. Robinson, supra. It should be noted, however, that four witnesses had testified during the trial that the defendant was insane. Furthermore, the defendant had a long history of disturbed behavior, including the murder of his infant son, an attempted suicide, and a period of confinement as a psychopathic patient.

Recently, a Virginia murder conviction was reversed and remanded by the Circuit Court of Appeals where the defendant waived indictment and trial by petit jury, following a sixty-day period of mental observation. The court questioned the defendant's "mental capacity knowingly and intelligently to waive his right * * *." Caudill v. Peyton, 368 F.2d 563, 565 (4th Cir. 1966). Counsel for the defendant was quoted from his testimony at the federal habeas corpus hearing:

> " 'I personally have some reservations, I did then and I do now, about George's capacity. But I thought that he was, at the time I was talking to him, it appeared to me he understood what we were talking about.' " (at p. 565)

Ultimately, the court refrained from passing finally on the problem where no question was raised about the defendant's sanity at the time of the offense or about his capacity to stand trial. Instead, the reversal was founded upon the failure to hold a public trial, where the proceeding was conducted in the judge's chambers.

This court recognizes the difficulties posed by the question of capacity to stand trial where it is raised after conviction. Insanity is one of the most difficult concepts to label with certainty. It represents a frontier of man's knowledge not easily susceptible to judicial tests. Its general nature cannot easily be determined without the aid of trained medical experts, whose findings are sometimes ambiguous. Thus, in the instant case petitioner presents this court with allegations which cannot readily be accepted. It is understandable that the courts have belatedly and reluctantly been forced to comment upon behavior motivations and to make judgments about their legal significance. This petition is considered under difficult circumstances, because the court must view the apparent realities after more than seven years elapsed and without the aid of expert observation or reports covering the period in question.

■■■ Petitioner does not allege that he was insane at the time of the offense, only at the time of trial. Under Virginia law the accused is presumed sane unless his mental capacity is called into question by proof to the contrary. The sole burden is to adduce facts sufficient to create in the court's mind reasonable ground to doubt his sanity for a pre-trial commitment for observation to be ordered. Thomas v. Cunningham, supra. This motion may be made either by counsel or by the court. No motion for an examination of petitioner was requested. Counsel visited the Lee County Jail at least five times during the month prior to June 4, 1959. On cross-examination at the state habeas hearing it was established that counsel had practiced law for "fifteen or sixteen years", that he had served as Commonwealth's Attorney for four years, and that he had "done a great deal of criminal practice." Never was a psychiatric examination sought. Counsel for petitioner was asked at the hearing:

> "Q. Mr. ———, at the times you were discussing the matter with the petitioner, his answering nod that you

referred to awhile ago, did that seem that he understood, did it appear that he understood the matter which you were discussing with him?

A. Well, I thought that he did or I wouldn't have entered the plea in his behalf." (Record of Hearing, pp. 65–66)

Counsel's testimony is in clear contrast to the statement of the defense attorney in Caudill v. Peyton, supra.

The trial court order on each indictment recites that the court was of the opinion that petitioner "fully understood the nature and effect of his plea." If good cause had not been shown doubtless the trial judge would have requested an examination of the petitioner. It appears there was unanimity among the legal experts present at the June 4 trial.

The medical experts who examined petitioner after June 20 testified that the incubation period for the mental condition they treated is unknown. They could not testify that petitioner had been ill on June 4 or earlier. Furthermore, the treating psychiatrists stated that petitioner's subsequent amnesia covering the period of the trial could easily result from the series of shock treatments received in the penitentiary hospital section.

This court agrees with the state court judge at the habeas hearing that there is nothing to "substantiate petitioner's contention that he was insane at the time of the trial other than findings made at a later date." Petitioner has failed to present any new evidence that would warrant a new hearing by this court.

From the survey of decisions on this subject and a thorough examination of the record, it is the opinion of this court that petitioner's claim is without merit. He has neither shown that he was denied his Constitutional right to a fair and impartial trial, nor has he supported his contention that he was insane at the time of his trial.

Therefore, it is hereby adjudged and ordered that the petition for habeas corpus be, and the same is hereby denied. A certified copy of this opinion and judgment is directed to be sent to the petitioner and to the respondent.