## STATE v. KENNETH LESLIE JENSEN.

153 N. W. (2d) 339.

October 6, 1967—No. 40,458.

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Solicitor General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

On July 1, 1965, defendant was convicted, pursuant to a jury verdict, of having on March 16, 1965, committed burglary, contrary to Minn. St. 609.58, subd. 2(3). His only defense had been alibi, as to which defendant and his foster sister testified. After the jury was excused, the

state moved for sentencing, and defendant was sworn and examined. In the course of the examination, the following occurred:

"Q. Is there anything you would like to say about this offense that you have just been found guilty of?

"A. Except I didn't do it, and I will—

"Q. Is there anything further you would like to say?

"A. Yes. At this time I am still mentally incompetent, and as a matter of fact, I have just shortly been released from Anoka State Hospital; at the time—well, about a month before I was arrested, and it would be—I have to appear in Court here in one year to prove my competency.

"THE COURT: Counsel, is there anything you would like to say?

"[DEFENSE COUNSEL]: Well, for the record, Your Honor, Mr. Jensen informed me as he was walking up for this interrogation by the Court that he had been in a mental institution just recently. I did not have much time to talk to him about it. I'm just wondering whether or not he has been discharged or under provisional discharge.

"DEFENDANT JENSEN: I'm under a provisional—Well, I'm still not competent.

"[DEFENSE COUNSEL]: It is my understanding that you had been at another mental institution?

"DEFENDANT JENSEN: Yes, three of them.

"[DEFENSE COUNSEL]: Three of them?

"DEFENDANT JENSEN: Yes, one in California, St. Peter, and one in Anoka, and the last three years I'm still held incompetent.

"[DEFENSE COUNSEL]: Well, Your Honor, in view of that I would request the Court to consider some psychiatric evaluation.

"THE COURT: Counsel?

"[PROSECUTOR]: The State has nothing, Your Honor.

"THE COURT: Well, you stand down here."

Thereupon the court sentenced defendant, but stayed the commitment for 6 days to permit defendant's counsel to determine what he wished to do regarding the matter of defendant's competency. The court then asked defendant why he did not inform his attorney of this matter before

trial. Defendant replied, "I didn't know that I should until somebody mentioned that, mentioned it to me."

On July 7, 1965, defendant's attorney further pursued the questions whether defendant had the mental capacity to be legally responsible for the crime or to actively participate in his defense. The trial court stated:

"* * * I'm confident, from my observations of him in this courtroom over nearly a week of trial, that he knows the difference between right and wrong, and that he was well able to conduct his defense. He strenuously contested this charge in Municipal Court in the preliminary hearing, is that not correct?

* * * * *

"* * * I never saw a more resourceful person on trial as he was. He was constantly conferring with you. He had people in the back of the courtroom that he was conferring with that were running in and out around the corridors, as you know. So I don't think there is any doubt but what he knew what he was doing, that he was well able, far more so than many people I have observed, to assist in his defense.

"Then, of course, he cunningly comes up after the jury has convicted him, he then comes up and tells the Court that he thinks he is mentally incompetent. I never saw a more cunning or resourceful person as this defendant."

The trial court thereupon revoked the stay of imposition of sentence and ordered defendant committed to the reformatory.

On November 3, 1965, the probate court of Hennepin County, having before it a September 23, 1965, classification summary prepared by a psychiatrist for the state which concluded that defendant was "a hard-core psycopath, possibly psychotic, who just doesn't fit in anyplace, not even in the Reformatory," vacated its October 31, 1963, order transferring defendant from the St. Peter Security Hospital to the Anoka State Hospital for the Mentally Ill as no longer dangerous; found that defendant's conduct while on provisional discharge from Anoka showed he was dangerous; and ordered that he be confined at St. Peter rather than at the reformatory.

On December 3, 1965, the probate court found defendant to have

recovered sufficiently to resume his imprisonment at the reformatory, but ordered that when he became eligible for release therefrom he should be remanded to the St. Peter Security Hospital.

Defendant appeals his conviction on the ground that the trial court failed to conduct a hearing on the issues of his mental capacity to commit the crime charged and to stand trial.

It is clear that if the evidence as to defendant's having been adjudged insane had been introduced earlier in the proceedings, the trial court would have held a hearing as to his competence to stand trial.[1] Prior insanity of a permanent type is presumed to continue. See, State v. Hayward, 62 Minn. 474, 65 N. W. 63; Krause v. Fogliani, 82 Nev. 459, 421 P. (2d) 949; Weihofen, Mental Disorder as a Criminal Defense, p. 228, and cases cited. We cannot accept the state's contention that defendant's insanity was not of a permanent type. Defendant's evidence was of "habitual insanity, which has continued so long as to raise a presumption that it is permanent," as opposed to "temporary or spasmodic insanity" (State v. Hayward, 62 Minn. 474, 492, 65 N. W. 63, 68). The fact that defendant was provisionally released from the Anoka State Hospital for the Mentally Ill did not rebut the presumption. See, Weihofen, op. cit. *supra,* p. 236. The probate court had ordered the hospital authorities not to grant an absolute discharge without review by that court. In Pate v. Robinson, 383 U. S. 375, 386, 86 S. Ct. 836, 842, 15 L. ed. (2d) 815, 822, the United States Supreme Court said: "While [defendant's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." In light of this case, we are precluded from accepting the trial judge's determination.

State v. Dhaemers, 276 Minn. 332, 150 N. W. (2d) 61, is cited by

---

[1] Minn. St. 611.026 provides: "No person shall be tried, sentenced, or punished for any crime while in a state of idiocy, imbecility, lunacy, or insanity, so as to be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong."

the state. There proceedings were had to determine whether defendant was competent to stand trial. Here no such procedures were employed.

The principal argument made by the state is that defendant's waiting to raise the point of his mental competence until after the verdict was patently strategic, and that defendant must therefore be held to have waived his right to present the issue. The United States Supreme Court has said otherwise. "* * * [I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." Pate v. Robinson, 383 U. S. 375, 384, 86 S. Ct. 836, 841, 15 L. ed. (2d) 815, 821. It is true that in the Pate case evidence at trial brought into question defendant's competence to stand trial, and that the Supreme Court was directing its remarks toward defendant's failure to demand a pretrial sanity hearing as provided by state law. But the principle is the same, and other courts have construed Pate to require a hearing whenever the point is raised. See, Kibert v. Peyton (W. D. Va.) 262 F. Supp. 694 (habeas corpus—denied petition, however, as defendant did not offer evidence sufficient to show he was incompetent to stand trial); Thursby v. State (Me.) 223 A. (2d) 61 (coram nobis—affirmed denial of petition for writ, however, as defendant did not offer evidence sufficient to show he was incompetent to stand trial);[2] Krause v. Fogliani,

---

[2] The court said (223 A. [2d] 66): "It is contradictory to argue that a defendant may be incompetent to stand trial and yet knowingly or intelligently waive his constitutional right of due process by waiving his right to have the court determine his capacity to stand trial. Counsel's failure to suggest to the court present mental incapacity at the time of trial and to request judicial determination thereof, is no bar in and of itself to relief in post conviction proceedings. * * * Mental competence to stand trial must be viewed as a basic and necessary foundation upon which a constitutional fair trial must depend. The mere thought of trying a person for crime when deprived of the mental capacity to make his defense or to understand his situation is shocking to our sense of fundamental fairness and such a judicial performance, if permitted, would be highly prejudicial and well calculated to result in injustice. When a sufficient claim of deprivation of such fundamental rights is made, it is in the interests of a well ordered society that there be a judicial determination of the issue when the same has not been adjudicated at the time of trial or prior thereto."

82 Nev. 459, 421 P. (2d) 949 (habeas corpus—reversed dismissal of petition). In Taylor v. United States (8 Cir.) 282 F. (2d) 16, 23, the court anticipated Pate v. Robinson, *supra,* and held that the matter may be raised for the first time on motions to vacate and set aside sentences, saying, "* * * [I]f one is mentally incompetent, then, by definition, he cannot be expected to raise that contention before the trial court and thus cannot be prejudiced by his failure to do so."

The state cites People v. Flemming, 197 Cal. App. (2d) 299, 17 Cal. Rptr. 323, and Morris v. State (Okla. Cr. App.) 356 P. (2d) 757. The Flemming case appears to be grounded largely upon the peculiarity of the function of the coram nobis writ. In Morris, defendant's contentions were rejected only after a full coram nobis hearing. To the extent that these cases may be inconsistent with the result herein, we do not follow them, noting that they were decided prior to Pate v. Robinson, *supra.*

In State ex rel. Christopherson v. Rigg, 258 Minn. 229, 103 N. W. (2d) 367, and State ex rel. Novak v. Utecht, 203 Minn. 448, 281 N. W. 775, we held that a defendant may not raise by means of habeas corpus the contention that he was not competent to stand trial, because, while Minn. St. 611.026 imposes a *duty* upon the trial judge to refrain from trying a defendant who is incompetent to stand trial, it does not go to the court's jurisdiction. We thus concluded that the judgments of conviction were not subject to collateral attack, as by habeas corpus. Perhaps these decisions should be reexamined in the light of Pate v. Robinson, *supra,* and subsequent cases, which indicate it is a denial of due process to try a person who is mentally incompetent to stand trial. At any rate, in the present case defendant presents the point by appeal rather than by habeas corpus, and the issue was raised before entry of the judgment of conviction.

Over two years have elapsed since the trial of this case. We appreciate the difficulty of determining now whether defendant was competent to stand trial then. It may not be possible to do so. But we feel the trial court should have an opportunity to assess this aspect of the matter before a new trial is directed. We therefore remand the matter to the district court with directions to set aside the judgment of conviction and grant a new trial herein unless the State shall establish within 60 days

of the filing of this decision by clear and convincing evidence that defendant was fully competent to stand trial at the time of his conviction.
Reversed and remanded.