James Winston **SHARP**, Petitioner,

v.

Dr. George J. **BETO**, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 3-344.

United States District Court
N. D. Texas,
Lubbock Division.

Nov. 27, 1967.

Bobby D. Allen, Lubbock, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., Allo B. Crow, Asst. Atty. Gen., Austin, Tex., for respondent.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This habeas corpus case, brought pursuant to 28 U.S.C.A. § 2241, presents the question of whether the petitioner, who was adjudicated insane by a state court and was thereafter put to trial by the state for the commission of a criminal offense, waived that guarantee accorded him by the Fourteenth Amendment that he not be convicted of a crime while he is legally incompetent. Pate v. Robinson, 1966, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815.

In 1930, the petitioner, James Sharp, was adjudged insane by a jury in the county court of Childress County, Texas. He was committed to the Wichita State Hospital in Wichita Falls, Texas. The records of the state proceedings filed in this court do not reflect when petitioner was released from the hospital.[1] The judgment of insanity has never been set aside by the county court.

In November, 1963, Sharp was indicted for the felony offense of violating the Texas Securities Act, Article 581, § 29, Vernon's Ann.Civ.Stat., the indictment alleging the offense occurred on or about September 6, 1963. He was tried and convicted in February, 1964, and sentenced to 5 years in prison and assessed a $3000 fine. His appeal was affirmed. Sharp v. State, Tex.Cr.App.1965, 392 S. W.2d 127.

Ten days before his trial began, Sharp wrote the district attorney who was going to prosecute his case:

"Dear Sir

A jury at Childress, Texas sent me to (a) State Hospital. When I was released my District Attorney told me that if I had any trouble that any District Attorney would be my Legal Counsul (sic). I am to to trial (sic) Monday Feb 10 1964 (sic) in Littlefield. Will you be avaible (sic) to proct (sic) me. Please advise me by return mail."

What transpired between the district attorney and Sharp after the receipt of this letter is not known. In any event, 2 days before the trial began on February 10, 1964, petitioner hired an attorney to represent him.

The case was tried without mention of the judgment of insanity. Petitioner's competency to stand trial was not put in issue. Following the jury verdict, Sharp approached the bench and engaged the court in a discussion of his sanity.[2] No action was taken by the trial court following this conversation.

On February 21, 1964, Sharp's attorney filed a motion for new trial, alleging only that the evidence was insufficient to support the verdict and that the punishment was excessive. The attorney requested the court to grant him additional time in which to file the amended motion for new trial, which request was granted.[3]

---

1. An evidentiary hearing was not held. By stipulation between the Attorney General of Texas and petitioner's court-appointed counsel, the case was submitted on the record developed in the state court proceedings.

2. What was said between the Court and petitioner does not appear in the record. Apparently no effort was made to supplement the record in this respect.

3. The Texas Code of Criminal Procedure provides that a motion for new trial be filed within 10 days of the date of the verdict. If not otherwise acted upon by the court, the motion is overruled as a matter of law 20 days after it is filed. An amended motion for new trial may be filed at any time within that 20 day period. It is overruled as a matter of law 20 days after it is filed. Article 755, C.C.P., 1925, in effect at the time of petitioner's trial. This statute is now Article 40.05, C.C.P., 1965.

On May 5, 1964, the amended motion for new trial was filed setting forth as its basis the judgment of insanity recorded in Childress County, together with certified copies of the judgment and the certification of non-revocation of the judgment by the clerk of the county court of Childress County. Accompanying the amended motion are the affidavits of Sharp and his attorney, Mr. Pounds. Petitioner's affidavit propounded that the judgment of insanity was newly discovered evidence, and that in the 2 days within which his attorney had to prepare for trial petitioner "could not impart that information to him." Sharp stated he had no one until February 8, 1964, to obtain this information for him and only through his attorney's more comprehensive investigation was the judgment uncovered.

Mr. Pounds' sworn statement reflects that on February 8, when he was retained by Sharp to represent him, petitioner informed him "only that he had been at one time in a state mental hospital but went no further with his explanation." From the information given by Sharp, Mr. Pounds concluded that the hospital confinement was "for 90 days only or for observation." The lawyer stated that at the conclusion of the trial he began an investigation of the status of Sharp's mental condition and that it was only upon receipt of a copy of the insanity judgment that he became cognizant of petitioner's mental status. The affidavit averred that "the late procuring of this evidence is not due to a lack of diligence on my part as attorney for defendant. Reasonable diligence was exercised by me as his attorney to acquire this evidence as quickly as possible for the benefit of the Court." The amended

motion alleged that because of the valid insanity judgment petitioner's conviction was a nullity and must be set aside.[4]

Upon the filing of this amended motion for new trial, the state court conducted a hearing concerning the allegations set forth therein.

The judgment of insanity and the clerk's certification of non-revocation were offered to the court on behalf of Sharp's request for a new trial. Defense counsel offered no other evidence. The district attorney then called Mr. Pounds to the witness stand. It was developed that on the day counsel was retained, February 8, he telephoned the district attorney at which time the latter informed Mr. Pounds of the letter he had received from Sharp, dated January 31, 1964, and that there was some indication of insanity of the petitioner. It was established that Mr. Pounds, in response to an inquiry by the district attorney, at that time declined the use of insanity as a defense. The attorney testified that on February 8, all he knew was "that there was something about insanity somewhere," and that the reason he did not raise the issue was because he "didn't know what the full particulars were."

The motion for new trial was overruled by the trial court, apparently on the ground that defense counsel waived the presentation of insanity as a defense or as a bar to the proceedings by his failure to file with the court prior to trial a written motion requesting the court to hear such evidence.[5] It was on this ground that the Texas appeals court affirmed the conviction.[6]

Both petitioner and respondent predicate their adverse contentions on Clark

---

4. In Texas an unvacated adjudication of insanity creates a presumption of continuing insanity and shifts the burden of proof to the state to establish the sanity of the accused. Clark v. Beto, 5 Cir. 1966, 359 F.2d 554; McGee v. State, 1950, 155 Tex.Cr.R. 639, 238 S.W.2d 707.

5. Article 932b, Texas C.C.P., 1925, Article 46.02, § 2, Texas C.C.P., 1965.

6. "[A]n attorney for an accused must use all diligence in securing evidence on the issue of insanity and * * * when, prior to trial, an attorney learns that his client has a record of a commitment for insanity, the attorney may not raise the issue for the first time in motion for new trial, as newly discovered evidence." Sharp v. State, Tex.Cr.App., 392 S.W. 2d 127, 128.

v. Beto, 5 Cir. 1966, 359 F.2d 554. Clark was convicted of burglary in a Texas court in 1960. At that trial the defense of insanity was not raised, although there was in existence an unvacated lunacy adjudication of Clark rendered in 1931 by a Texas court. The conviction was appealed and affirmed. Not until his second application for a writ of habeas corpus in the Texas courts did Clark raise the question of his competency to stand trial because of the lunacy adjudication. The writ was denied and the case proceeded into the federal district court where relief was denied Clark. 232 F. Supp. 255 (S.D.Tex., 1966). On appeal, the Circuit reversed and remanded, stating at 359 F.2d 557,

> [W]here facts indicating the defendant was insane at the time of his trial come to light only after the completion of that trial, and this issue was neither consciously waived by counsel nor determined adversely to the defendant at the time of trial, the trial and the judgment resulting therefrom are subject to collateral attack.

The court's order on remand directed the district court to "determine whether Clark informed his trial counsel of the 1931 lunacy adjudication or whether his counsel knew of it at the time of the trial." 359 F.2d at 557. In the event the district court found that counsel did not know of the lunacy adjudication it was directed to ascertain whether Clark was insane at the time of his trial.

While *Clark* clearly imparts that competency to stand trial is primarily a defense issue which may be w ived, a later decision by the Fifth Circuit would substantially alter this standard in determining the defendant's responsibility for not raising the competency issue. In Floyd v. United States, 5 Cir. 1966, 365 F.2d 368, Judge Brown stated, at 377,

> it can no longer be contended, as the Government here does, that a defendant's failure to raise the question of competency at trial precludes his raising it subsequently in a § 2255 proceeding—*even when the question was presented by a pretrial psychiatric re-*

*port* * * * For * * * it [cannot] be said that Appellant's failure to raise this question constituted a waiver * * *. (Italics added.)

Floyd's trial counsel had been given the pretrial psychiatric report, ordered by the court pursuant to 18 U.S.C.A. § 4244. He interposed no objection to the report nor did he raise the issue of incompetency. Floyd pleaded guilty and was sentenced. A year and one half thereafter Floyd filed a § 2255 motion, alleging he was incompetent at the time he pleaded guilty and averred that he had been, at times prior to his plea, confined in 2 mental hospitals. The district court denied the motion.

In reasoning that Floyd did not "waive" the competency issue, Judge Brown said, 365 F.2d 377, at fn. 15,

> The Supreme Court has recently noted that 'it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial.' Pate v. Robinson, 1966, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815, 821. Of course, the doctrine of waiver may have some vitality in the abuse of remedy exception to the hearing requirement of § 2255. As explained in Sanders v. United States, supra, [373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)] 373 U.S. at 17–19, 83 S.Ct. at 1078–1079, 10 L.Ed.2d at 162–163, this exception dispenses with the necessity for a hearing on a prisoner's § 2255 motion where the ground alleged in that motion was deliberately withheld from assertion by the prisoner in a prior § 2255 motion. And, it would seem, the same equitable principles underlying this exception would apply where the ground asserted in an original § 2255 motion was deliberately withheld from assertion at trial. However, the Court in *Sanders* made clear that the test used to determine abuse of remedy in the § 2255 area is the same as the test laid down in Fay v. Noia, 1963, 372 U.S. 391, 438–439, 83 S.Ct. 822, 848–849, 9 L.

Ed.2d 837, 868–869, for determining whether there has been a deliberate by-pass of state courts in the federal habeas area * * * —'an intentional relinquishment or abandonment of a known right or privilege' * * *."

The holding of Pate v. Robinson that an incompetent cannot waive a hearing on his capacity to stand trial is weakened by the court's consideration of the waiver issue. 383 U.S. 384, 86 S.Ct. 841, 15 L. Ed.2d 821. However, Judge Brown's rationale in *Floyd* apparently clarifies this obfuscation by holding that an allegation in a habeas corpus case of mental incompetency at the time of trial forecloses the issue of waiver of that question at the trial, *provided* the allegation is supported by records or averments which do not conclusively show the petitioner is entited to no relief. 365 F.2d 378. If the facts accompanying the allegation conclusively show that the petitioner is entitled to no relief the habeas corpus action must be dismissed. Sanders v. United States, 1963, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. However, should the facts show otherwise, the respondent may not defeat the allegation by urging that there was a waiver of the issue by the petitioner in the trial court.[7]

■ As the record in the instant case contains an allegation of incompetency supported by facts which do not show that petitioner is entitled to no relief, the respondent's contention that petitioner waived presentation of the mental competency issue in the trial court is without merit.[8] As Sharp presented this allegation supported by the aforesaid facts to the state trial and appellate courts, this court concludes that the state courts denied him due process of law by holding that he waived presentation of the competency issue and by refusing to accord him a hearing on his mental competency to stand trial.[9]

---

7. While Judge Brown intimates that the "abuse of remedy" theory applicable to § 2255 proceedings, Sanders v. United States, supra, would, on similar equitable principles, apply to the deliberate by-pass of an issue at the trial stage, it is noted that the standard for determining whether there has been an abuse of remedies is the same as that for determining whether there has been a "waiver" as set forth in Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Hence, if an incompetent is unable to "waive" presentation of the mental incompetency issue in the trial court he would be equally unable to deliberately by-pass that issue. Consequently, it would appear that an incompetent could only abuse such a remedy by not raising it in successive habeas corpus applications. See, Sanders v. United States, supra.

8. Floyd v. United States was a habeas corpus case brought by a federal prisoner pursuant to 28 U.S.C.A. § 2255. There is, however, no difference between federal and state prisoners when habeas corpus relief is sought on the ground of mental incompetency at the time of trial. Lee v. State of Alabama, 5 Cir. 1967, 373 F.2d 82, vacated on other grounds, 386 F.2d 97 (5 Cir. June 27, 1967, slip opinion No. 22994). Clark v. Beto, 5 Cir. 1966, 359 F.2d 554.

Hence, the rule of *Floyd* applies to this proceeding under 28 U.S.C.A. § 2241.

9. At the time of Sharp's trial in 1964, the Texas law permitted the issue of "insanity" to be raised in relation to 3 independent periods of time. It could be raised in relation to the time of the commission of the offense in which case its proof was considered a complete defense to the crime; it could be raised in relation to the time of the trial in which case its proof would require that the trial be postponed until such time as the defendant regained his "sanity;" or it could be raised after conviction and before sentencing in relation to the mental condition of the defendant at that time in which case it was a bar to the execution of the sentence until such time as the defendant regained his sanity. Article 932b, Texas Code of Criminal Procedure, 1925. Sharp's allegation in his motion for new trial, made after conviction and before his sentencing, that his conviction was a "nullity," necessarily raised the issues of insanity at the time of the criminal act and insanity at the time of the trial. In Texas a plea of insanity at the time of the trial raises the questions of "is the accused mentally competent to make a rational defense?" Guagando v. State, Tex.Cr. App., 1874, 41 Tex. 626, 630, and wheth-

There remains the consideration of the relief to be afforded Sharp. Three procedures are available from which an appropriate remedy may be tailored: (1) this court may hear and determine the issue of petitioner's competency to stand trial in February, 1964, Clark v. Beto, supra; (2) this court may remand the case to the state court for a determination of this issue, Pate v. Robinson, supra; or (3) upon a determination by this court that a retrospective consideration of petitioner's competency could not be adequately undertaken it may vacate the judgment of conviction and order a new trial. Pate v. Robinson, supra.

Subsequent to the rendition of Clark v. Beto and Pate v. Robinson, the Fifth Circuit, sitting *en banc,* has given careful consideration to the delicate circumstances which accrue in favor of one or more of the above possible remedies. In Lee v. State of Alabama, 5 Cir., 386 F.2d 97, June 27, 1967, the Circuit held that upon a finding by a federal district court that there had been no determination of the competency issue in the state courts, where the allegation of incompetency is supported by facts which do not show that the petitioner is entitled to no relief, the following steps should be taken: (1) notwithstanding the court's finding to the contrary, the state should be given an opportunity to demonstrate that the competency issue was put in evidence in the state proceedings, either before the trial, during the trial, or otherwise and that a determination was made thereon; (2) in the absence of such a demonstration on the part of the state the district court must decide whether it can conduct an adequate hearing on the question of the petitioner's competency at the time of the state trial; and (3) if the district court concludes that it is unable to make an adequate determination thereof, it must set aside the judgment of conviction and order a new trial.

Therefore, the respondent will be given 15 days within which to demonstrate to this court that petitioner's competency to stand trial in February, 1964, was determined by the state court at that time. In the absence of an affirmative showing thereon by the respondent, this court will conduct a hearing to determine the adequacy with which it can retrospectively assess petitioner's competency to stand trial in 1964.

Order accordingly.

er he is in such a mental condition as would render him unable to confer with his attorney or to otherwise exercise his judgment either independently or in cooperation with his counsel in all mat-

ters relating to his trial. Morrow v. State, 1949, 154 Tex.Cr.R. 21, 224 S.W. 2d 481. Hence, the competency issue was before the trial court on motion for new trial.