

## VI

Coke & Coke, by Ernest E. Figari, Jr., Dallas, Tex., for petitioner.

Crawford C. Martin, Atty. Gen., of Texas, by Robert Darden, Asst. Atty. Gen., Austin, Tex., for respondent.

## OPINION AND JUDGMENT

WILLIAM M. TAYLOR, Jr., District Judge.

This is a habeas corpus proceeding initiated by Leonard L. McLain. McLain was convicted in Dallas Criminal District Court on November 14, 1957, of murder with malice and sentenced to life imprisonment.

The undisputed evidence shows that soon after petitioner was arrested he confessed to the crime and signed a statement to that effect. The court appointed counsel for McLain because he was an indigent. The appointed attorney, prior to trial, filed a request that a sanity hearing be held. Along with the requested motion was the attorney's affidavit that McLain was of unsound mind. On that same day a motion for continuance of trial was requested by defendant's counsel in order to further investigate petitioner's sanity and history. The court granted the motion for

**Leonard L. McLAIN, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 3–2140.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 30, 1970.

continuance and a month later the defendant, by counsel, withdrew the affidavit of insanity and waived the hearing. Also a second motion for continuance was filed seeking additional time to get medical records (which evidently were never obtained by defendant's counsel) and to have a doctor complete a mental examination.

There seems to be no explanation for the fact that the request for a sanity hearing was withdrawn before any medical records were obtained or the mental examination was completed. It also remains unexplained why a second motion for continuance on the basis of further investigation into petitioner's sanity was filed and granted after the request for the sanity hearing was withdrawn.

The main question this court is concerned with at this time is whether the State trial court in 1957 should have convened a hearing to determine petitioner's competency to stand trial or plead. The courts very jealously protect those who are charged with an offense but who are incompetent to stand trial. The Supreme Court agreed with the Solicitor General in Dusky v. United States (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L. Ed.2d 824:

> " * * * it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

This may be a difficult test to follow but one which must be adhered to if people are to receive due process. Pouncey v. United States (1965) 121 U.S. App.D.C. 264, 349 F.2d 699, goes further to state:

> "A judge's responsibility to guard against the possibility that an accused person may have become incompetent does not end when the trial begins."

In the case at bar the petitioner's appointed attorney was aware of the possibility of McLain's insanity. He had been told by McLain that this should be looked into and also that there were medical records. The court was aware of the possible sanity question because of the original request for the sanity hearing, the accompanying affidavits and the motions for continuance on file.

In Rees v. Payton (1966) 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583, the Supreme Court demonstrated how far it would go in guarding the rights of one who was possibly incompetent. Rees filed a petition for certiorari in the Supreme Court and one month later sought to have his counsel withdraw it. His counsel advised the court of Rees' possible insanity and there were conflicting psychiatric reports. The court stated:

> "Whether or not Rees shall be allowed in these circumstances to withdraw his certiorari petition is a question which is ultimately the responsibility of this Court to determine * * *."

The District Court was directed to conduct a sanity hearing before the Supreme Court would allow the withdrawal of the petition.

Also, in 1966, the often quoted Pate v. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, decision was rendered. In that habeas corpus case the Supreme Court laid down some guidelines which must be followed in matters involving sanity questions. The one quoted most often states:

> "Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing * * *."

The Court went on to say:

> "While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue."

The peculiar events in the case at bar should have raised a "bona fide doubt" in the Court's mind as to McLain's sani-

ty. To reiterate a point, this is an area of due process where a court should be very cautious in its dealings with the accused. As stated in the *Pate* case, " * * * it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." The Fifth Circuit, in Floyd v. United States (5 Cir., 1966), 365 F.2d 368, said that it cannot be said, "that Appellant's failure to raise this question [of sanity] constituted a waiver, nor can it be held that the Trial Court's acceptance of his guilty plea amounted to a judicial determination of competency immune from collateral attack." So when McLain's appointed attorney withdrew the request for a sanity hearing, even though he had not received ordered mental records nor a report on an examination of defendant scheduled but not performed or completed, the court was not relieved of its duty to conduct a hearing on the possible insanity of McLain. There was a "bona fide doubt" as to McLain's sanity and McLain did not waive his right to a hearing on this question. This is not to say that this court is now ruling on McLain's sanity at the time of his trial, now, or at any time. The heart of the question is only whether there should have been a hearing on sanity at the time of his trial. Upon the facts before the court in this case it is apparent that the State trial court should have held a sanity hearing to further investigate McLain's competency to stand trial.

The next question to consider is the remedy available to Petitioner at this time. This court has faced the remedy issue in Sharp v. Beto, D.C., 276 F.Supp. 871. Following the holding in Lee v. State of Alabama (5 Cir., 1967), 386 F.2d 97, this court set forth these steps:

"(1) notwithstanding the court's finding to the contrary, the state should be given an opportunity to demonstrate that the competency issue was put in evidence in the state proceedings, either before the trial, during the trial, or otherwise and that a determination was made thereon; (2) in the absence of such a demonstration on the part of the state the district court must decide whether it can conduct an adequate hearing on the question of the petitioner's competency at the time of the state trial; and (3) if the district court concludes that it is unable to make an adequate determination thereof, it must set aside the judgment of conviction and order a new trial."

Therefore, the respondent will be given twenty (20) days from the entering of this Judgment to demonstrate to this court that the competency issue was determined by the State court in 1957. If such a demonstration is not made within the time allowed, this court will determine whether it can adequately decide on petitioner's competency at the time of the State Trial in 1957.

Ordered accordingly.