Joseph S. **ROBINSON,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 22247.

United States Court of Appeals
District of Columbia Circuit.

June 12, 1969.

Order Oct. 23, 1969.

Certiorari Denied March 9, 1970.
See 90 S.Ct. 1095.

Mr. De Long Harris, Washington, D.
C., for appellant.

Mr. Robert C. Crimmins, Asst. U. S.
Atty., with whom Messrs. David G.
Bress, U. S. Atty., and Frank Q. Ne-
beker, Asst. U. S. Atty., at the time the
brief was filed, were on the brief for
appellee.

Before BURGER, TAMM, and LEV-
ENTHAL, Circuit Judges.

PER CURIAM.

This cause came on to be heard on the
record on appeal from the United States
District Court for the District of Colum-
bia, and was argued by counsel.

On consideration thereof It is ordered
and adjudged by this Court that the
judgment of the District Court appealed
from in this cause is hereby affirmed.

Circuit Judge (now Chief Justice)
BURGER did not participate in the de-
cision of this case.

Before BAZELON, Chief Judge, and
WRIGHT, McGOWAN, TAMM, LEVEN-
THAL, ROBINSON, MacKINNON, and
ROBB, Circuit Judges, in Chambers.

ORDER

PER CURIAM.

On consideration of appellant's sug-
gestion for rehearing *en banc,* it is

Ordered by the Court *en banc* that
appellant's aforesaid suggestion is de-
nied.

Statement of Chief Judge BAZELON
as to why he would grant rehearing *en
banc.*

BAZELON, Chief Judge:

At the time of the offense which ap-
pellant is alleged to have committed, he
was involuntarily confined for treatment
in St. Elizabeths Hospital, D.C.Code §
24–301(d) (1967), based on a determina-
tion that he was mentally ill. His con-
finement could not have been continued
without such a determination, D.C.Code
§ 24–301(e) (1967).[1] Over his objec-
tion, the trial judge charged the jury
that the appellant was presumed to be
sane.

Appellant was committed to St. Eliza-
beths in April 1966 following an acquittal
by reason of insanity. He was exam-
ined by the head of the Larch Ward and
diagnosed as having a mental illness.
The hospital records continued to show
him as suffering from the same dis-
order until November 30, 1967, more
than ten months after the offense of
which he presently stands convicted is
alleged to have occurred. He was trans-
ferred to the John Howard Pavilion on
April 15, 1967, when the hospital re-
ceived a detainer for him from the U.
S. Attorney's Office because he was the
main suspect in an armed robbery of a
dry cleaning establishment in the neigh-
borhood of St. Elizabeths on January 18,
1967 (at which time he had "Class C"
privileges under a "close check" by hos-
pital personnel). On June 21, 1967, an
indictment was filed in the District

1. See Bolton v. Harris, 130 U.S.App.D.C. 1, 13, 395 F.2d 642, 654 (1968).

Court charging appellant with robbery and assault with a deadly weapon.

After his transfer to John Howard, appellant was interviewed by Dr. Economon, who was to display a very solicitous attitude toward the prosecution over the following months.[2] Obviously, the examination of appellant was taking place under the peculiar circumstance that the hospital found itself with a patient who was accused of perpetrating a robbery while under the hospital's care and supervision. Seven and a half months elapsed between appellant's transfer to John Howard and Dr. Economon's diagnosis. In August 1967 Dr. Economon still had not made up his mind whether appellant was mentally sound; in his words, he intended to "wait and see what the courts would do." Dr. Economon explained this on the witness stand by saying that he did "not want to act administratively in conflict with something else" but denied that the court's or prosecutor's actions had affected his diagnosis. In October 1967 he responded to an inquiry from the Veterans Administration that appellant was mentally ill. Then on November 28, 1967, he wrote a letter to the United States Attorney in which he said he would "attempt to cooperate with [the U. S. Attorney] in every way in this matter of mutual concern" regarding appellant's sanity and his ability to stand trial. On November 30, 1967, Dr. Economon diagnosed appellant as "Without Mental Disorder." The appellant was released from St. Elizabeths December 19, 1967, and arraigned on January 26, 1968. In March 1968 he was tried and convicted for the January 1967 robbery.

At trial, the appellant requested the judge to instruct the jury that he was not presumed to be sane at the time of the crime because he was then being held in St. Elizabeths, diagnosed as mentally ill.[3] Instead the judge charged the jury in the usual language that "every person is presumed to be sane." This instruction, despite the judge's later mention that the jury could consider the confinement in St. Elizabeths as cutting the other way, raises a serious legal question which requires more than the opinionless affirmance herein.[4] Therefore, I would grant rehearing *en banc*. 28 U.S.C. § 46(c) (1968); Fed.R.Crim.P. 35(a) (2).

---

2. In addition to the "sanity" instruction, the facts of this case raise questions concerning the court-related roles of expert witnesses (see my concurrence in Proctor v. Harris, 134 U.S.App.D.C. 109, 413 F.2d 383 (1969)). In this regard, Dr. Economon's conduct was not reassuring, to say the very least. The "presumption of sanity" charge was apparently given on the basis of his testimony, in the face of contrary testimony by the Director of the Larch Ward and the official hospital diagnosis of mental illness at the time of—and for more than ten months subsequent to—the alleged offense. In these circumstances, the charge requires particular scrutiny.

3. The appellant also requested and was denied another instruction which would have established the irrebuttable presumption that he had a mental disease at the time of the crime; if this instruction were proper, the question for the jury would have been limited to whether the act was the product of the disease. *Cf.* People v. Samman, 408 Ill. 549, 97 N.E.2d 778 (1951); State v. Elsea, 251 S.W.2d 650, 651 (Mo.1952); Kizer v. State, 130 Tex. Cr.R. 185, 92 S.W.2d 439 (1936).

4. *Cf.* Sharp v. Betto, 276 F.Supp. 871 (N.D.Texas 1967); State v. Jensen, 278 Minn. 212, 153 N.W.2d 339 (1967).